RAYMOND M. LODGE ET AL. *v.* ARETT SALES
CORPORATION ET AL.

PATRICIA HUGHES, ADMINISTRATRIX (ESTATE OF
HOWARD A. HUGHES), ET AL. *v.* ARETT
SALES CORPORATION ET AL.

MARITZA RIVERA, ADMINISTRATRIX (ESTATE OF
HERIBERTO RIVERA), ET AL. *v.* ARETT
SALES CORPORATION ET AL.

JAMES A. MOROTTO, JR., ET AL. *v.* ARETT
SALES CORPORATION ET AL.
(SC 15832)
(SC 15833)

Callahan, C. J., and Borden, Berdon, Palmer and E. O'Connell, Js.

564

Argued February 19—officially released August 25, 1998

*Frank H. Santoro,* with whom was *Matthew G. Conway,* for the defendant Baker Protective Services, Inc., Wells Fargo Alarm Services Division.

*Brian M. Gildea,* with whom, on the brief, was *Thomas E. Stevens,* for the defendant Advanced Automatic Sprinkler Protection Systems, Inc.

*James K. Robertson, Jr.,* with whom was *Giovanna T. Weller,* for the plaintiff Raymond M. Lodge et al.

*Michael A. D'Amico,* for the plaintiff James A. Morotto, Jr., et al.

*John R. Horvack, Jr.,* with whom, on the brief, was *Neil Rossman,* for the plaintiff Patricia Hughes, et al.

*William J. Tracy, Jr.,* for the plaintiff Maritza Rivera et al.

*Thomas G. Parisot,* with whom were *John J. Coughlin* and, on the brief, *Eric R. Brown,* for the defendant Arett Sales Corporation.

*Andrew J. O'Keefe,* with whom was *Joseph M. Busher,* for the city of Waterbury.

*William H. Narwold, Charles D. Ray* and *Mary C. Morabito* filed a brief for the Connecticut Business and Insurance Industry Association, Inc., as amicus curiae.

*John T. Harris, Sheila A. Huddleston, S. Bryan Lawrence III* and *F. J. Lucchino* filed a brief for the National Burglar and Fire Alarm Association et al. as amici curiae.

*J. William Gagne, Jr.*, filed a brief for the Waterbury Fire Fighters Association, Local 1339, as amicus curiae.

*David T. Grudberg* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

CALLAHAN, C. J. The dispositive issue in these appeals is whether the defendants, who negligently caused the transmission of a false fire alarm, are liable to firefighters injured during an accident precipitated by the negligent maintenance and failure of the brakes on the responding fire engine.[1] The plaintiffs[2] are two

---

[1] The issues raised in these appeals are whether the trial court improperly: (1) concluded that the defendants owed a duty of care to the plaintiffs; (2) presented the issue of proximate cause to the jury; (3) struck the defendants' claim for indemnification against the city; (4) struck the defendants' apportionment claim against the city; and (5) denied bifurcation of the liability and damages phases of the trial. The amended appeal adds as an additional issue whether the trial court improperly concluded that the defendant Baker Protective Services, Inc., Wells Fargo Alarm Services Division (Wells Fargo), was not entitled to indemnification from the defendant Arett Sales Corporation under its contract, which contains an indemnification clause. The cross appeal to the amended appeal, raises the issue of whether the trial court properly denied Arett Sales Corporation, a passive negligent actor, indemnification from Wells Fargo, an active negligent actor. The plaintiff Maritza Rivera, on her cross appeal, raises the issue of whether the trial court improperly denied her request for interest on the judgment against Wells Fargo from the date of her unified offer of judgment. Because we resolve the first issue in favor of the defendants, reverse the judgment of the trial court, and order that judgment be rendered in favor of the defendants, it is unnecessary to address the remaining issues. See footnote 17 of this opinion with respect to the issue raised in the amended appeal.

[2] The plaintiffs are firefighter Raymond M. Lodge and Anne Lodge; Patricia Hughes, individually and as administratrix of the estate of firefighter Howard A. Hughes; Maritza Rivera, individually and as administratrix of the estate of firefighter Heriberto Rivera; and firefighter James A. Morotto, Jr. The claims of the plaintiff Diane Morotto were withdrawn prior to submission of the issues to the jury. The city of Waterbury intervened as a plaintiff to recover its costs of workers' compensation benefits paid to or on behalf of the four firefighters. The city withdrew as a party when it entered into a settlement with the plaintiffs. For convenience, we refer to the firefighters collectively as the plaintiffs, without reference to the other plaintiffs.

Waterbury firefighters, the representatives of the estates of two Waterbury firefighters, and three of the firefighters' spouses. They brought this action against three defendants—Baker Protective Services, Inc., Wells Fargo Alarm Services Division (Wells Fargo), Arett Sales Corporation (Arett), and Advanced Automatic Sprinkler Protection Systems, Inc. (Advanced). The plaintiffs alleged that the defendants negligently caused the transmission of a false fire alarm to which the plaintiffs responded. They allege further that, while they were responding to the false alarm, the brakes of their fire engine failed, causing the engine to strike a tree. As a result of the collision, two firefighters died and the surviving plaintiffs suffered serious injuries. The jury returned a verdict against the defendants in favor of the plaintiffs in excess of $4.4 million.[3] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now § 65-1, and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The record reveals the following facts. Wells Fargo installed a burglar and fire alarm system at premises owned by Arett in Waterbury. After Wells Fargo began monitoring the system, but prior to the time the system became fully operational, Wells Fargo contracted with Advanced to perform certain services on the system. Although Advanced asked both Wells Fargo and Arett whether the system was operational and monitored, both responded that it was not. On the morning of May 10, 1990, Advanced proceeded to perform the necessary services without first testing whether the system was operational and without taking steps to shut the system down. At no time during the course of the services

---

[3] The jury awarded the plaintiffs damages against Wells Fargo in the amount of $3,325,444, and against Advanced in the amount of $1,108,481. Arett settled prior to the time of judgment.

being performed by Advanced was the alarm monitoring station or the local fire dispatch center notified that service was being performed on the Arett system. The failure to give such notice was contrary to both the internal policies of Wells Fargo and the standards of the National Fire Protection Association. It is likely that proper notification would have prevented a response to the false alarm that resulted from the performance of services on Arett's alarm system.

Additionally, on the morning on which Advanced was working on the system, the Wells Fargo monitoring station received two supervisory signals, which are indicative of a problem with the system. Although proper procedures mandated that the monitoring station contact the client to determine the nature of the problem, the monitoring station never contacted Arett. Had the station followed proper procedure, it would have learned that service was being performed on the system and could have made the necessary notation to avoid reporting the subsequent false alarm. Two minutes after the second supervisory signal was received at the monitoring station, an alarm was received indicating the existence of a fire at Arett. When a system transmits a fire alarm soon after a supervisory signal, it often indicates that the system is being serviced and that the alarm is false. Nonetheless, the monitoring station erroneously notified the Waterbury fire department at approximately 11:20 a.m. that a fire was in progress at Arett's business location.[4] Waterbury Fire Engine Company 11 (Engine Company 11) was dispatched to respond to the alarm. Engine Company 11

---

[4] Additionally, fire alarm industry standards required that the monitoring station contact the client immediately after notifying the fire department in order to confirm that a fire actually was in progress. The station did not contact Arett in a timely manner. A timely determination of a false alarm might have allowed the fire department dispatcher to return the fire engine to its base without incident.

was operating Engine Number 9 (engine), a spare vehicle provided to them while their primary vehicle was undergoing repairs. A fire engine carries water and hoses, as opposed to a fire truck, which provides aerial ladders.

Prior to receiving the alarm concerning Arett, James Morotto, the driver for Engine Company 11, had been advised by the previous driver that the engine's brakes were not functioning properly. When Morotto tested the brakes, however, they appeared to be adequate. When the engine crew attended a training session that morning, however, Morotto observed while in transit that the engine's brakes were not operating correctly. After the training session, therefore, Morotto brought the engine to the city garage for repair. The mechanic on duty noted that the engine's brakes needed minor adjustments, but informed the crew that he was unable to perform the service until after lunch.

The alarm from Arett was received soon after Engine Company 11 returned to its base and before the engine's brakes were repaired. The engine crew responded to the alarm, which they believed to be legitimate. Because of wet road conditions, Morotto flipped a switch to eliminate power to the engine's front brakes because, although this reduces braking power by approximately 50 percent, it is usually safer to operate without front brakes on wet roads. After having gone approximately three blocks, the engine began to descend a hill. It was traveling at approximately fifteen miles per hour when Morotto realized that the engine's brakes had failed. Attempts to use the engine's auxiliary brake were unsuccessful. Because cars were stopped at the bottom of the hill, Morotto attempted to veer into a parking lot, the entrance to which was partially blocked by a car. While attempting to swerve around the car, Morotto struck an embankment, which caused him to lose control of the vehicle and strike a tree.

The engine's brake failure was caused by a leak in a water hose. The city had been aware of the leak for some time, and the engine's crew had made repeated requests to repair the hose. Several requests to repair the brakes also had been made. The leaking water had caused the engine's braking mechanism to rust, creating the braking problem.

The plaintiffs, as employees of the city of Waterbury (city), were subject to workers' compensation law and received benefits pursuant to the Workers' Compensation Act. General Statutes § 31-275 et seq. Consequently, they have no cause of action against the city for negligence for allowing the brakes to fail. General Statutes § 31-284 (a).[5] The plaintiffs brought this action against Arett, Advanced and Wells Fargo seeking to hold them liable for the full extent of the plaintiffs' harm owing to the negligent transmission of the false alarm to which the plaintiffs were responding when they were killed or injured.

It cannot be disputed that there was adequate evidence from which the jury could have found that the defendants acted negligently in causing and reporting the false alarm, and the defendants concede that if they

---

[5] General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

owed a duty to the plaintiffs, a breach of that duty could have been found. As a threshold matter, therefore, it is necessary to determine whether, as a matter of law, the defendants owed the plaintiffs a duty of care to protect them from the harm that occurred while they were responding to the false alarm. The defendants argue that they cannot be held to have owed a duty to the plaintiffs because the failure of the engine's brakes, which precipitated the collision, is beyond the scope of the reasonably foreseeable risks created by their negligent conduct. The plaintiffs contend, however, that any collision of a fire engine with any object, for any reason, is a foreseeable risk whenever an engine is responding to an emergency, and, therefore, a duty toward them must be imposed on the defendants.

"Duty is 'a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual.' 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:05, p. 25-7." *Jaworski* v. *Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997); *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 385, 650 A.2d 153 (1994). "[T]he determination of whether a duty exists between individuals is a question of law. *Petriello* v. *Kalman*, 215 Conn. 377, 382, 576 A.2d 474 (1990); *Shore* v. *Stonington*, 187 Conn. 147, 151, 444 A.2d 1379 (1982). Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty. *Petriello* v. *Kalman*, supra, 382–83. When the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record.[6]

---

[6] The trial court made no express finding that a duty of care was owed. The defendants raised the issue of duty in three separate motions for summary

Practice Book § 4061 [now § 60-5]; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992) . . . . *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996)." (Internal quotation marks omitted.) *Jaworski* v. *Kiernan*, supra, 404–405. "We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. [*RK Constructors, Inc.* v. *Fusco Corp.*, supra], 386–87." (Internal quotation marks omitted.) *Zamstein* v. *Marvasti*, 240 Conn. 549, 558, 692 A.2d 781 (1997).

"Our first step in an analysis of whether a duty exists and the extent of the defendant[s'] duty, therefore, is to determine the foreseeability of the plaintiff[s'] injury . . . ."[7] *Jaworski* v. *Kiernan*, supra, 241 Conn. 406.

judgment, directed verdict and judgment notwithstanding the verdict. The trial court denied each motion. By submitting the issue of negligence to the jury, and sustaining the verdict, however, the court implicitly concluded that the defendants owed a duty of care to the plaintiffs.

[7] We have expressed the first prong of the duty analysis as follows: "Although it has been said that no universal test for [duty] ever has been formulated; W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . . *Frankovitch* v. *Burton*, 185 Conn. 14, 20–21, 440 A.2d 254 (1981); *Noebel* v. *Housing Authority*, 146 Conn. 197, 200–201, 148 A.2d 766 (1959); *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 237, 21

Both the plaintiffs and the defendants agree that to meet the test of foreseeability, the *exact* nature of the harm suffered need not have been foreseeable, only the "general nature" of the harm. Id., 405; *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 385. They diverge, however, with respect to the proper interpretation of the permissible level of generality of the harm. The plaintiffs assert that the general nature of the harm at issue is the possibility of a collision of a fire engine occurring while it is responding to an alarm. They would have us conclude that the brake failure is essentially irrelevant to the determination of foreseeability and should be viewed as no more than one of many possible contributing factors.[8]

The defendants, on the other hand, assert that the general nature of the harm is a collision precipitated by the brake failure of the fire engine owing to negligent maintenance by the city. The defendants argue that by employing a foreseeability test that incorporates such a high level of generality to the harm in this case, the plaintiffs have essentially created a strict liability standard. That is, under the plaintiffs' argument, any accident involving a fire engine responding to a negligently transmitted false alarm would be a basis for imposing liability on the initiator of the alarm, irrespective of the direct cause of the accident. Although the defendants

---

A.2d 402 (1941)." (Internal quotation marks omitted.) *Jaworski* v. *Kiernan*, supra, 241 Conn. 405–406; *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 385.

[8] We are unpersuaded by the plaintiffs' efforts to minimize the significance of the brake failure as the direct cause of the accident. They assert that the real cause of the accident was Morotto's failed effort to veer around a parked car, causing him to strike the embankment, lose control and strike the tree. They assert that attempting to avoid other motor vehicles is a common cause of emergency response vehicle accidents. It is undisputed, however, that the fire engine's attempt to enter the parking lot was solely a result of the fact that it had experienced brake failure. The brake failure was the direct and dominant cause of this accident.

concede that there are certain foreseeable risks of accidents that stem from a fire engine responding to a false alarm, they contend that the failure of the engine's brakes introduced a risk not merely of a different degree, but of a different kind for which they reasonably cannot be held liable. The defendants maintain that the brake failure and the resulting collision were not foreseeable consequences of their negligent conduct.

We agree with the defendants that the analysis of foreseeability logically cannot be extended so far that the term "general harm" incorporates any accident involving a fire engine responding to a false alarm with no consideration given to the direct cause of the accident. It is impractical, if not impossible, to separate the question of duty from an analysis of the cause of the harm when the duty is asserted against one who is not the direct cause of the harm.[9] In defining the limits of duty, we have recognized that "[w]hat is relevant . . . is the . . . attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand." *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 387–88. Articulated another way, the attenuation between the plaintiffs' harm and the defendants' conduct is nothing more than a determination of whether

---

[9] We noted in *RK Constructors, Inc.*, quoting from the leading treatise on the law of torts, that the duty inquiry relating to the attenuation between a plaintiff's harm and a defendant's negligent conduct is "quite similar to the analysis that we engage in with respect to the third element of negligence, proximate causation. Indeed, as Professors Prosser and Keeton have noted, '[t]he question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same.' W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 42, p.

the harm was a reasonably foreseeable consequence of the defendants' conduct.[10] It is a well established tenet of our tort jurisprudence that "[d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable. See *Palsgraf* v. *Long Island R. Co.*, 248 N.Y. 339, 345, 162 N.E. 99 [1928] . . . ." (Citation omitted.) *Noebel* v. *Housing Authority*, 146 Conn. 197, 202, 148 A.2d 766 (1959); see also *Edwards* v. *Tardif*, 240 Conn. 610, 618, 692 A.2d 1266 (1997); *Clohessy* v. *Bachelor*, 237 Conn. 31, 46, 675 A.2d 852 (1996). "[A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. *Noebel* v. *Housing Authority*, [supra, 202]; *Goldberger* v. *David Roberts Corporation*, 139 Conn. 629, 633, 96 A.2d 309 [1953]. Due care is always predicated on the existing circumstances." *Roy* v. *Friedman Equipment Co.*, 147 Conn. 121, 124, 157 A.2d 599 (1960).

Inasmuch as virtually all harms, in hindsight, are "literally 'foreseeable' "; *RK Constructors, Inc.* v. *Fusco*

274; see also id., § 53, p. 358." *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 387–88 n.4.

[10] With respect to the question of a defendant's liability for the unforeseeable consequences of its negligent conduct, Professors Prosser and Keeton have noted that "[a]t the risk of becoming wearisome, it must be repeated that the question is primarily not one of causation and never arises until causation has been established. It is rather one of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. In so far as the defendant is held liable for consequences which do not lie within the original risk which the defendant has created, a strict liability without fault is superimposed upon the liability that is logically to be attributed to the negligence itself. It is simpler, and no doubt more accurate, to state the problem in terms of legal responsibility: is the defendant legally responsible to protect the plaintiff against such unforeseeable consequences of the defendant's own negligent acts?" W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 43, pp. 280–81. Although the parties have briefed and argued the issue of foreseeability as an independent causation issue, we believe that this issue relates more directly to a determination of whether liability should be imposed for unforeseeable consequences of a defendant's negligent conduct and is more appropriately resolved as a question of duty. See *Smith* v. *Leuthner*, 156 Conn. 422, 426, 242 A.2d 728 (1968).

*Corp.*, supra, 231 Conn. 386; we might conclude that the engine's brake failure technically was foreseeable.[11] It is for this reason that the law has rejected a literal "foreseeability" test as the fulcrum of duty. See *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996); *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 385–86. "[T]he conclusion that a particular injury to a particular plaintiff or class of plaintiffs possibly is foreseeable does not, in itself, create a duty of care. As we . . . stated in *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 386: 'Many harms are quite literally "foreseeable," yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.' " *Waters* v. *Autuori*, supra, 827–28.

We recognize, as we have in the past, that the issue of foreseeability cannot be neatly compartmentalized and considered wholly separate from the policy issues that are central to our legal determination of duty. See *Jaworski* v. *Kiernan*, supra, 241 Conn. 404–406 (assuming foreseeability, public policy dictates no duty of care owed by defendant); *Waters* v. *Autuori*, supra, 236 Conn. 826, 835–36 (same); *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 385–87 (same). We focus

[11] The possibility of a fire engine's brake failure, although remote, is not beyond the realm of possibility. According to data compiled by the United States Department of Transportation, National Highway Traffic Safety Administration regarding nationwide motor vehicle accident statistics spanning a ten year period from 1980 through 1990, a total of five emergency fire vehicle accidents were attributable to brake failure.

our decision, therefore, equally on the policy implications of this case rather than strictly upon the foreseeability of the plaintiffs' harm. For the reasons subsequently discussed, we conclude that the defendants owed no duty to the plaintiffs in these circumstances because: (1) the harm was not *reasonably* foreseeable; and (2) "the fundamental policy of the law, as to whether the defendant[s'] responsibility should extend to such results"; (internal quotation marks omitted) *Jaworski* v. *Kiernan,* supra, 406; *RK Constructors, Inc.* v. *Fusco Corp.,* supra, 384; weighs in favor of concluding that there should be no legal responsibility of the defendants to the plaintiffs under the circumstances.

Notwithstanding the retrospective foreseeability of the possibility of the engine's brake failure, we agree with the defendants that the harm suffered by the plaintiffs qualifies under the category of an unforeseeable consequence. Liability may not be imposed merely because it might have been foreseeable that some accident could have occurred; rather, liability attaches only for *reasonably* foreseeable consequences. *Jaworski* v. *Kiernan,* supra, 241 Conn. 404–406; *Waters* v. *Autuori,* supra, 236 Conn. 826, 835–36; *RK Constructors, Inc.* v. *Fusco Corp.,* supra, 231 Conn. 385–87. We conclude that the brake failure of a negligently maintained fire engine is beyond the scope of the reasonably foreseeable risks created by the transmission of a false alarm and that legal responsibility for the resulting accident should not extend to these defendants. Negligent transmission of a false alarm, by unnecessarily causing an emergency response, does increase the usual road hazards attendant on the operation of an emergency vehicle on the public roadways. Such increased road hazards might include the danger that the driver of the fire engine or the operators of other vehicles might cause

accidents as a result of high rates of speed and congested streets. It might be reasonable in some such circumstances to impose liability on the initiator of the false alarm. It cannot reasonably be said, however, that liability for negligently causing a false alarm should include the risk that the emergency vehicle will be negligently maintained and utilized, causing it to experience brake failure. Imposing liability on these defendants for a harm that they reasonably could not be expected to anticipate and over which they had no control would serve no legitimate objective of the law. See *Corcoran* v. *Jacovino*, 161 Conn. 462, 469, 290 A.2d 225 (1971).

In every case in which a defendant's negligent conduct may be remotely related to a plaintiff's harm, the courts must draw a line, beyond which the law will not impose legal liability. Although that line is often amorphous and difficult to discern, we conclude that it has been crossed in this case. The possibility that a city would so negligently maintain its vehicles and that firefighters would operate a fire engine, the mechanical soundness of which was clearly in doubt, is sufficiently remote that a reasonable person should not be expected to anticipate such an event. "To hold otherwise would be to convert the imperfect vision of reasonable foreseeability into the perfect vision of hindsight." *Burns* v. *Gleason Plant Security, Inc.*, 10 Conn. App. 480, 486, 523 A.2d 940 (1987); *Evangelical United Brethren Church of Adna* v. *Washington*, 67 Wash. 2d 246, 261, 407 P.2d 440 (1965) ("[r]easonable foreseeability, rather than hindsight, is the criterion which must be applied"). Consequently, we conclude that the defendants owed the plaintiffs no duty to prevent the harm suffered because that harm was not reasonably foreseeable.

In addition, we are persuaded that liability should not attach because of those policy considerations relating to the underlying purposes of tort recovery. "[T]he fundamental policy purposes of the tort compensation

system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . ." *Mendillo* v. *Board of Education*, 246 Conn. 456, 482, 717 A.2d 1177 (1998). "It is sometimes said that compensation for losses is the primary function of tort law . . . [but it] is perhaps more accurate to describe the primary function as one of determining when compensation [is] required." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 4, p. 20. An equally compelling function of the tort system is the " 'prophylactic' factor of preventing future harm . . . . The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer." Id., p. 25. "[I]mposing liability for consequential damages often creates significant risks of affecting conduct in ways that are undesirable as a matter of policy. Before imposing such liability, it is incumbent upon us to consider those risks." *Mendillo* v. *Board of Education*, supra, 483. Under the factual circumstances of this case, we conclude that the benefits to be derived from requiring these defendants to compensate the plaintiffs are outweighed by the costs associated with that compensation.

The potential benefit achieved from the imposition of liability in this case is limited to providing recovery for the plaintiffs from one other than the principal tortfeasor. The plaintiffs have already been compensated for their injuries by the city, as their employer, for injuries sustained in the course of their employment. The fact that the plaintiffs' recovery against the defendants would exceed that which would be available as workers' compensation benefits cannot justify the imposition of liability for an accident that was not a reasonably foreseeable consequence of the defendants' negligent conduct. We have concluded that "the public [rather than individual defendants] should compensate

its safety officers both in pay that reflects the hazard of their work and in workers' compensation benefits for injuries suffered when the risks inherent in the occupation materialize." *Furstein* v. *Hill*, 218 Conn. 610, 619, 590 A.2d 939 (1991).[12] Because firefighters knowingly engage in a dangerous occupation, we have concluded that they are owed only the limited duty owed to licensees by landowners upon whose property they sustain injury in the course of performing their duty. Id., 615; *Roberts* v. *Rosenblatt*, 146 Conn. 110, 112, 148 A.2d 142 (1959). The policies supporting the application of a narrow scope of duty owed by individual landowners to firefighters counsels us to conclude that it would be inappropriate to establish a broad scope of duty owed by these defendants to guard against unforeseen consequences. It would be irrational to conclude that firefighters are owed a greater duty by individual members of the public while they are en route to the scene of an emergency than when they arrive at the scene. The plaintiffs have been compensated for their risk by society as a whole by way of workers' compensation as well as other statutory benefits provided to injured firefighters. See General Statutes §§ 7-432 and 7-433b (providing disability and death benefits in addition to

---

[12] In *Furstein*, we analyzed the firefighter rule, which gives a firefighter the status of a licensee in a personal injury action against a landowner for harm sustained during the course of duty. *Furstein* v. *Hill*, supra, 218 Conn. 615–16 (applying rule to police officers). The firefighter rule is not directly applicable in this case because this is not an issue of landowner liability, and we decline to extend the rule to the present situation. Its rationale is, however, instructive for understanding the policy issues relevant to compensation of firefighters injured in the line of duty. We concluded that limited liability was appropriate in *Furstein* v. *Hill*, supra, 615, and *Roberts* v. *Rosenblatt*, 146 Conn. 110, 112–13, 148 A.2d 142 (1959), because (1) the nature of a firefighter's work is inherently hazardous and the choice of that occupation is akin to assumption of the risk, and (2) firefighters are adequately compensated for the job they perform and are able to recover workers' compensation for injuries sustained in the course of their employment. *Furstein* v. *Hill*, supra, 617–20. Both of these public policy considerations are equally relevant to the question of whether, as a matter of policy,

workers' compensation for firefighters injured in course of employment).[13] To impose additional liability on the defendants under these circumstances would impose an undue burden on individual members of the public. *Furstein* v. *Hill*, supra, 619; see *Bears* v. *Hovey*, 159 Conn. 358, 361, 269 A.2d 77 (1970); *Schiavone* v. *Falango*, 149 Conn. 293, 298, 179 A.2d 622 (1962).

The plaintiffs assert that the imposition of liability on the defendants is necessary to achieve a stated purpose of tort law, namely, to encourage alarm companies to use due care in the installation and servicing of their products. We are unpersuaded. The nature of remote monitoring virtually guarantees that some false alarms will occur, regardless of the level of care exercised to avoid such events.[14] Alarm companies already have

the defendants should be liable for the unforeseen consequences of their negligent transmission of a false alarm.

[13] General Statutes § 7-432 provides in relevant part: "Any member shall be eligible for retirement and for a retirement allowance who has completed at least ten years of continuous service if he becomes permanently and totally disabled from engaging in any gainful employment in the service of the municipality. If such disability is shown to the satisfaction of the Retirement Commission to have arisen out of and in the course of his employment by the municipality, as defined by the Workers' Compensation Act, he shall be eligible for retirement irrespective of the duration of his employment. Such retirement allowance shall continue during the period of such disability. . . ."

General Statutes § 7-433b (a) provides in relevant part: "Notwithstanding the provisions of any general statute, charter or special act to the contrary affecting the noncontributory or contributory retirement systems of any municipality of the state, or any special act providing for a police benefit fund or other retirement system, the survivors of any uniformed or regular member of a paid fire department or any regular member of a paid police department whose death has been suffered in the line of duty shall be eligible to receive such survivor benefits as are provided for in the Workers' Compensation Act, and, in addition, they shall receive such survivor benefits as may be provided for in the retirement system in which such department member was a participant at the time of his death . . . . Nothing contained herein shall prevent any town, city or borough from paying money from its general fund to any such survivors, provided total weekly benefits paid shall not exceed said one hundred per cent of the weekly compensation."

[14] We also note that Waterbury has a city ordinance that limits the number of false alarms that may be generated prior to the imposition of a penalty.

adequate incentives to avoid negligent conduct that causes false alarms in that they may be held liable for the reasonably foreseeable consequences of their negligent conduct. As noted previously, those consequences may include those accidents that normally and naturally occur as a result of a fire engine's operation under emergency conditions. Consequently, alarm companies already have significant incentives to avoid generating false alarms. Imposing liability for unforeseen consequences would not increase their impetus to act with due care.

Moreover, fire departments regularly receive false alarms, and every emergency response entails a substantial risk that harm may result from the emergency conditions that prevail in answering any alarm. It is an unfortunate aspect of the dangerous nature of a firefighter's duty that he or she is subject to a risk of injury in responding to alarms, whether false or legitimate. The imposition of liability under the circumstances presented here would not appreciably reduce that risk given the absence of a direct causal connection between the negligent conduct of generating a false alarm, and the accident owing to the brake failure of a negligently maintained fire engine. The fact that the alarm was false, in itself, did not contribute to the cause of this accident. Had the alarm been legitimate, the brake failure still would have occurred. No degree of

See § 2A-3 (f) of the Waterbury city code, which provides in relevant part that "[a] maximum of three (3) false alarms per year shall be allowed from any alarm system . . . at a given location without penalty. . . . Upon receipt of a fourth false alarm and for each false alarm thereafter during each said yearly period, a fine shall be assessed in accordance with this chapter." The purpose of the Waterbury alarm system regulations is to "encourage the installation of protective alarm systems in all dwellings and commercial structures." Waterbury City Code, § 2A-1. By permitting three false alarms without penalty, the city recognizes that such false alarms are sometimes unavoidable, and the imposition of a penalty for every false alarm would not be consistent with the goal of encouraging the installation and use of protective alarms.

care on the part of the defendants could have prevented the brake failure. Admittedly, but for the alarm, the fire engine probably would not have been on the road at the time of the accident. Although actual causation has always been a prerequisite to liability, it has never been sufficient, in and of itself, to justify the imposition of liability. *Abrahams* v. *Young & Rubicam, Inc.*, 240 Conn. 300, 307, 692 A.2d 709 (1997); *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 605–606, 662 A.2d 753 (1995); *Doe* v. *Manheimer*, 212 Conn. 748, 758, 563 A.2d 699 (1989).

We conclude, therefore, that imposing liability on the defendants would achieve little in preventing the type of harm suffered by the plaintiffs. Indeed, it is likely that the opposite result would occur. Imposing liability on these defendants would have the deleterious effect of exempting the party that is primarily responsible for the plaintiffs' harm from all liability. Pursuant to General Statutes § 31-293 (a),[15] the city normally would

---

[15] General Statutes § 31-293 (a) provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury; and any employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. . . . If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. The rendition of a judgment in favor of the employee or the employer against the party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems

be entitled to recover the full costs of workers' compensation benefits paid to the plaintiffs from any judgment against these defendants. Such exemption would reward the city for the conduct that directly caused this accident by shifting the entire burden of liability to the shoulders of the defendants for their tangential role in initiating the sequence of events that led to the plaintiffs' injuries. The city is in the best position to ensure the safety of the mechanical equipment used by its firefighters. We decline to interpret the defendants' applicable duty so broadly that the city would be insulated from liability for its failure to do so.

Counterbalancing the limited benefit of providing these plaintiffs with greater compensation than is available through workers' compensation and other statutory disability and survivor benefits are the significant costs that would derive from imposing liability under the facts presented. We frequently have concluded that when the social costs associated with liability are too high to justify its imposition, no duty will be found. See *Mendillo* v. *Board of Education,* supra, 246 Conn. 487–88; *Zamstein* v. *Marvasti,* supra, 240 Conn. 561; *Fraser* v. *United States,* 236 Conn. 625, 634–35, 674 A.2d 811 (1996); *Maloney* v. *Conroy,* 208 Conn. 392, 403–404, 545 A.2d 1059 (1988). If one who initiates a false alarm may be liable for those consequences that are not reasonably foreseeable, but, rather, are significantly attenuated from the original negligent conduct, that liability will impose an unreasonable burden on the public. The costs stemming from this undue burden may include a substantial chilling of the willingness to report an emergency prior to investigating further to determine

payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. . . ."

whether it is legitimate. Such delay may cost precious time, possibly leading to the unnecessary loss of life and property. It also may reduce the willingness of property owners to install alarms for fear of liability. Furthermore, imposing liability for such remote consequences undoubtedly will increase the cost of installing and monitoring alarms. Although those social costs may not be sufficient to prompt us to conclude that public policy dictates that there should be no duty in a case where the harm and the negligence are less attenuated or where the benefits of imposing liability are more substantial, under the circumstances of this case, we find them compelling. See *Fraser* v. *United States*, supra, 635; *Roy* v. *Friedman Equipment Co.*, supra, 147 Conn. 124.

Finally, we note that by concluding that the defendants did not owe a duty of care to these plaintiffs under the factual circumstances presented, we do not create immunity for alarm companies, their clients or subcontractors.[16] Under most circumstances, alarm companies, and their associates, will owe the same duty of care that is expected of any enterprise for those harms that are reasonably foreseeable and within the scope of the risk created by their negligent conduct. We conclude only that, on the facts presented, the defendants cannot be held liable to the plaintiffs for the harm suffered as a result of the brake failure of the city's fire engine simply because the defendants

---

[16] The defendants argue that public policy considerations compel the conclusion that they should not be liable for this accident because alarm companies provide for the greater good of society and the imposition of liability would have a detrimental effect on their beneficial conduct. The plaintiffs argue that such a basis of reasoning would constitute immunity. Our conclusion that the imposition of liability in this case would be unreasonable is not based on a conclusion that the defendants are entitled to immunity because of their socially beneficial function. Rather, it is a fact-bound determination based on the attenuation between the plaintiffs' harm and the defendants' conduct.

negligently caused the transmission of a false alarm to which the engine was responding. Such unforeseeable consequences are not within the scope of the risk created, and the law cannot countenance the extension of legal responsibility to such an attenuated and unexpected result.[17]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the defendants Wells Fargo and Advanced on the plaintiffs' complaints.

In this opinion BORDEN, PALMER and O'CONNELL, Js., concurred.

BERDON, J., dissenting. I agree with the majority that in order to determine whether there is a duty of care under the facts of this case, a two part test must be satisfied: (1) was the plaintiff firefighters' (firefighters) accident foreseeable; and (2) does it comport with the fundamental policy of our law to hold the defendant liable. *Clohessy* v. *Bachelor*, 237 Conn. 31, 45–46, 675 A.2d 852 (1996). I disagree with the majority's application of this test and the result reached.

I

FORESEEABILITY

"The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result

---

[17] We note, with respect to the issue raised by Wells Fargo in its amended appeal seeking reversal of the trial court's decision not to enforce the indemnification clause in its contract with Arett, that the issues therein are not entirely disposed of by our conclusion that the defendants owed no duty to the plaintiffs. See footnote 1 of this opinion. The contract included an indemnification clause that, if enforceable, would require indemnification of Wells Fargo by Arett for the costs of litigation as well as the amount of the judgment. By concluding that the judgment against Wells Fargo must be reversed, we have not determined who is responsible for Wells Fargo's litigation costs. Wells Fargo has requested, however, that we review the issue of the proper interpretation of the indemnification clause in its contract only in the event that we do not reverse the underlying judgment in favor

if it is not exercised. *Botticelli* v. *Winters*, 125 Conn. 537, 542, 7 [A.2d] 443 [1939]. By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that *harm of the general nature of that suffered* was likely to result?" (Emphasis added; internal quotation marks omitted.) *Frankovitch* v. *Burton*, 185 Conn. 14, 20–21, 440 A.2d 254 (1981).

The question in this case, therefore, is whether the defendant Baker Protective Services, Inc., Wells Fargo Alarm Services Division[1] knew or should have known that harm of the general nature suffered by the firefighters was likely to result from the negligent transmission of a false alarm to the fire station. In other words, we should focus on the general nature of the harm and not the specific manner in which the injury occurred or the conduct of a third party, to determine foreseeability.

The defendant concedes that harm resulting from an accident "arising out of the exigent circumstances of fire truck travel on busy streets"—such as traveling at a high rate of speed, swerving through traffic jams, and traveling into vehicles that fail to move out of the fire truck's path—are foreseeable. Nevertheless, the defendant, like the majority, attempts to distinguish those accidents from one caused by the negligent maintenance of the brakes of a fire engine. In my view, this distinction is not relevant to our analysis of foreseeability. Instead, it is relevant with respect to the jury's determination of whether the defendant's negligence

---

of the plaintiffs. Because we reverse that judgment, we do not address the issue.

[1] For the purposes of this dissent, I shall focus solely on the liability of the defendant Baker Protective Services, Inc., Wells Fargo Alarm Services Division. Therefore, references to the defendant are to that defendant only.

was the proximate cause of the firefighters' injuries; *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 611, 662 A.2d 753 (1995) ("question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue"); an issue decided by the jury in favor of the firefighters in this case. Indeed, if the majority is correct that an accident caused by the negligently maintained brakes of a fire engine can be distinguished from an accident caused by a fire engine having to swerve through traffic, it raises the question of whether accidents caused by other third parties, such as drivers who negligently (1) fail to stop for a fire engine, (2) turn into the path of an oncoming fire engine, or (3) fail to alert a fire engine to their presence on the road by turning their lights on in the evening, can be distinguished in the same way. Of course, those accidents are all foreseeable and the defendant concedes as much.

It is clear from the record that the defendant should have known that firefighters responding to a false alarm could be involved in an accident.[2] It is also clear that the fire engine's brake failure, which the majority concedes was "not beyond the realm of possibility," was foreseeable.[3] See, e.g., *Neal* v. *Shiels, Inc.*, 166 Conn. 3, 13–14,

---

[2] The defendant's employee training manual, entitled "Central Station Operator Training Program," which was admitted into evidence, provides in relevant part: "By distinguishing between a *circuit trouble* and an *alarm,* we avoid sending the fire department to false alarms that are the result of broken or loose wires. (We do not dispatch the fire department to 'trouble signals.') *Keep in mind that when a fire department responds somewhere, it does so with 'red lights and sirens,' and that this is dangerous due to the risk of accident.* Also keep in mind that when a fire department is responding to one building, it isn't available to respond anywhere else. It is very important to keep the false alarm rate to a minimum, and by generating a 'trouble signal' instead of an alarm for certain types of malfunctions, we do just that." (Emphasis altered.)

[3] Although the majority pays lip service to the defendant's claim that the accident was an "unforeseeable consequence," it recognizes that the defendant stands on thin ice with such an argument.

347 A.2d 102 (1974) (danger of plaintiff children being struck by automobile was foreseeable risk of ice cream vendor's act of using public streets to sell wares); *Mitnick* v. *Whalen Brothers, Inc.*, 115 Conn. 650, 651, 163 A. 414 (1932) (foreseeable that plaintiff would suffer miscarriage as result of motor vehicle collision that occurred near her). Accordingly, I would find that the harm suffered by the firefighters in the present case was foreseeable.

## II

## POLICY OF THE LAW

The majority holds that the fundamental policy of the law prevents this court from imposing a duty of care on alarm companies to protect firefighters from the harm that occurred while responding to the negligently transmitted false alarm in this case. According to the majority, the benefits of requiring a fire alarm company to compensate an injured party for a breach of such a duty is outweighed by the costs associated with that compensation. Specifically, the majority argues that recognition of such a duty would result in increased societal costs for the installation and investigation of fire alarms and would impose an undue economic burden on individual members of society. I disagree with the majority's analysis because it ignores the nature of the defendant's negligence, and this state's public policy of allowing firefighters injured in the course of their employment as the result of the negligence of a third party to be fully compensated for their injuries.

This case does not present the typical false alarm scenario in which the alarm company quickly transmits a signal initiated by someone else, without attempting to verify whether the signal reflects an actual emergency. Rather, in this case, the defendant played an active role in triggering the alarm itself, which set in motion a

chain of events that led to the firefighters' injuries. Indeed, the negligence of the defendant was threefold. First, the defendant chose to "cut in" the alarm system—that is, activate the system—long before the installation was completed because it wanted to commence billing the owner of the building in order to generate profits. Second, when the installation was being completed, the defendant's employees failed to notify its central monitoring office and the Waterbury fire department so that they would know that if an alarm signal were transmitted, it would be a false one. The failure to give such notice was contrary to both the defendant's internal policies and the standards promulgated by the National Fire Protection Association. Third, the defendant's employees at the central monitoring station violated these same policies and standards when they failed to immediately contact the customer after alerting the fire department in order to ascertain if it was a false alarm. If the defendant had followed established policy, it would have ascertained that it was a false alarm and the fire department's response could have been aborted before the firefighters left the station because of the normal delay in the response time to an alarm.

The majority, ignoring this outrageous conduct on the part of the defendant, argues that imposing a duty of care under the facts of this case: (1) would not increase the defendant's "impetus to act with due care"; (2) would chill the willingness of persons to report fire emergencies prior to investigating the situation further; and (3) would reduce the willingness of property owners to install alarms for fear of liability.[4] The fundamental flaw of these arguments is that the imposition of

---

[4] The majority also argues that because firefighters engage in a dangerous occupation, and, in essence, are highly compensated for assuming the risks inherent in the profession, the duty owed to them should be limited. Such reasoning is in direct opposition to a simple assumption of our tort law: by imposing liability on the tortfeasor, we seek to deter that negligent conduct.

liability in this case does not amount to strict liability; the duty to be imposed is that the defendant act reasonably. Clearly, as the jury found, if the defendant had acted reasonably by preventing the false alarm signal from its customer's business from being reported to the fire station, or by ascertaining that it was a false alarm and notifying the firefighters so that they would not respond, this accident would not have occurred. Since the defendant could have prevented the false alarm from being transmitted by simply placing one telephone call to the Waterbury fire department, advising it that work was being performed on the system or advising it after the fact that it was a false alarm, the majority's second and third claims can only be characterized as irrational fears.

The majority also advances the unusual argument that it would be irrational to impose a duty on the defendant to prevent the negligent transmission of false alarms because individual property owners owe a lesser duty of care to firefighters who actually enter their property to combat a fire. The majority suggests that the reasoning of the "firefighter rule,"[5] limiting the duty owed a firefighter who enters one's premises to that which is owed a licensee, can and should be extended to limit the duty owed firefighters injured en route to the scene of an emergency. The majority appears to conclude that the goal of spreading the risk of a firefighter's injuries to the public through workers' compensation, salary and fringe benefits—rather than to individual defendants—justifies such a limitation of duty. In my opinion, this justification is flawed because by denying the firefighters recovery from the negligent

---

Precisely because the firefighters are engaged in a dangerous occupation should be a compelling policy reason for imposing a broader duty on those persons and companies who increase that danger through their negligent acts.

[5] See *Roberts* v. *Rosenblatt*, 146 Conn. 110, 113, 148 A.2d 142 (1959).

defendant, the majority has "not directed [the firefighters] to recover [their] damages from the general public; rather [it has] totally precluded [the firefighters] from recovering these damages from anyone." *Christensen* v. *Murphy*, 296 Ore. 610, 620, 678 P.2d 1210 (1984). "Contrast this with other public employees who are injured when confronting dangers on their jobs [e.g., postal workers, sanitation workers, etc.]. The latter [employees] can recover workers' compensation and salary benefits from the public, but are also allowed additional tort damages from the third-party tort-feasors. [Thus, u]nder the 'fireman's rule' the injured public safety officer must bear a loss which other public employees are not required to bear." Id.

Therefore, in contrast to the majority, I would not extend the reasoning of the firefighter rule to this case. In fact, I would follow the lead of our sibling jurisdictions by overruling the firefighter rule, which we also have made applicable to police officers.[6] See, e.g., id., 620–21 (rule abolished and "no longer can bar recovery of damages for personal injuries sustained by a [firefighter], in the course of his or her employment, as a result of a defendant's negligent conduct"); see also *Dini* v. *Naiditch*, 20 Ill. 2d 406, 416, 170 N.E.2d 881 (1960) ("since the common-law rule labelling firemen as licensees is but an illogical anachronism, originating in a vastly different social order, and pock-marked by judicial refinements, it should not be perpetuated in the name of 'stare decisis' ").[7]

Furthermore, the majority argues that imposing liability on the defendant would have the "deleterious effect of exempting the party that is primarily responsible

---

[6] See *Furstein* v. *Hill*, 218 Conn. 610, 615–23, 590 A.2d 939 (1991).

[7] The following states have also legislatively abolished the firefighter rule: Fla. Stat. Ann. § 112.182 (West 1992 and Sup. 1998); Minn. Stat. Ann. § 604.06 (West Sup. 1998); N.J. Stat. Ann. § 2A:62A-21 (West Sup. 1998); N.Y. General Municipal Law § 205-a (McKinney Sup. 1998).

for the [firefighters'] harm from all liability." General Statutes § 31-293 (a)[8] provides in part that an employer, such as the city of Waterbury, may "bring an action against [a third party tortfeasor] to recover any amount that [it] has paid or become obligated to pay as [workers'] compensation to [its] injured employee. . . ." Because the legislature has placed no limitation on an employer's express right to recover compensation awards from third party tortfeasors, it would be a violation of public policy for the majority to deny liability on this basis. *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.*, 182 Conn. 437, 442, 438 A.2d 705 (1980) (legislature is sole arbiter of public policy when it speaks). Indeed, if the legislature wanted to limit an employer's right to seek damages from third party tortfeasors when the negligence of the employer contributed to the injury, it would have provided for that result—but it did not.

Finally, the majority bases its refusal to impose a duty on the following cases, cases in which I voiced my vigorous dissent: *Mendillo* v. *Board of Education*, 246 Conn. 456, 717 A.2d 1177 (1998) (failure to find duty so that child can be compensated from tortfeasor for parental loss of consortium); *Zamstein* v. *Marvasti*, 240 Conn. 549, 692 A.2d 781 (1997) (failure to impose duty so that patient may be compensated from psychiatrist who negligently accused patient of sexually abusing his child); and *Fraser* v. *United States*, 236 Conn. 625, 674 A.2d 811 (1996) (failure to impose duty on part of psychotherapist who negligently failed to warn third party that patient intended to harm him). With today's decision, the majority adds another case to this growing list of infamous cases in which this court has allowed persons to evade liability for injuries caused by their negligence because it would violate the fundamental policy of the law. The fundamental policy of the law that guides this court today, however, as reflected in

---

[8] See footnote 15 of the majority opinion for the text of § 31-293 (a).

*Mendillo*, *Zamstein* and *Fraser*, unfortunately, is not cast in standards of the twenty-first century, but, rather, is mired in the jurisprudence that was prevalent in the nineteenth century.

Accordingly, I dissent.