[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#175)
On December 19, 1994, the plaintiffs, Rebecca and Lauriston LaMay, filed this action against various defendants, including Connecticut Light CT Page 10773-a Power Company (CLP), the movant on the present motion for summary judgment.[1] The plaintiffs seek to recover damages for injuries sustained when an unruly crowd allegedly attacked them while they were riding on their motorcycle in Bloomfield, Connecticut.
The plaintiffs allege the following relevant facts in the third amended complaint, dated November 29, 1999. In the late afternoon of July 9, 1994, a young girl drowned in the Farmington River at the Tariffville Gorge, an area located between the river and Route 189 in Bloomfield, Connecticut. CLP owned this land and allowed the general public access to it for recreational purposes.
On the day of the drowning, a crowd gathered at the gorge to observe recovery efforts. The crowd remained there during the next two days as recovery efforts continued. Various individuals in the crowd also engaged in acts that disturbed the peace, including stopping traffic on Route 189, making verbal threats and committing various violent and criminal acts. At approximately 6:45 p.m. on July 11, 1994, several individuals of the crowd blocked traffic on Route 189 adjacent to the gorge area and attacked the plaintiffs who were riding on their motorcycle. The plaintiffs suffered serious injuries as a result.
In counts thirteen and fourteen of the third amended complaint, the plaintiffs assert that CLP created or participated in the creation of a public nuisance in that they allowed the crowd to remain in the area of the gorge when they knew or should have known that the crowd was engaged in acts which were disturbing the public peace, including the community's ability to use Route 189, a public thoroughfare. (See Third Amended Complaint, Counts Thirteen and Fourteen, ¶ 14.) The plaintiffs further allege that as a result of CLP's failure "to take reasonable steps to disperse the crowd or otherwise properly control the crowd," they suffered severe emotional distress and physical injuries. (See Third Amended Complaint, Counts Thirteen and Fourteen, ¶¶ 15, 18-22.) CLP denies the substantive allegations in the complaint and asserts several special defenses, including immunity pursuant to General Statutes §52-557g.[2]
CLP now moves for summary judgment on the ground that it is immune from liability pursuant to the Recreational Land Use Act, General Statutes §§ 52-557f through 52-557i. CLP further seeks summary judgment on the grounds that it owed no duty of care to the plaintiffs and that CLP's alleged negligence was not the proximate cause of the plaintiffs' injuries. The plaintiffs argue in response that the Recreational Land Use Act is inapplicable to the facts of this case and CT Page 10773-b that there are genuine issues of material fact which preclude the granting of summary judgment.
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.
"A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 378, 260 A.2d 596 (1969). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) United OilCo. v. Urban Redevelopment Commission, supra, 378-79. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990).
 I Recreational Land Use Act
CLP contends that pursuant to General Statutes §§ 52-557f through52-557i, it is immune from liability for the plaintiffs' injuries because the land was made available to the public, without charge, for recreational purposes. The plaintiffs argue, however, that they were neither injured on CLP's land nor were they using it for recreational activities when they were injured and, therefore, § 52-557g is inapplicable to the facts of the present case.
General Statutes § 52-557g (a) provides in relevant part that "an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, CT Page 10773-c use, structure or activity on the land to persons entering for recreational purposes." It is undisputed that CLP made its land available for recreational purposes free-of-charge. The issues are whether the crowd on CLP's property was engaged in a recreational activity and whether CLP is immune from liability for the plaintiff's injuries pursuant to § 52-557g, though the plaintiffs were not on CLP's property when the injuries occurred. The court concludes that, as a matter of law, the crowd on CLP's property was not engaged in a recreational activity and, therefore, § 52-557g is inapplicable to the facts of the present case.
The evidence clearly demonstrates that the crowd which had gathered at the Tariffville Gorge was not engaged in a recreational purpose as the term is defined in § 52-557f.[3] General Statutes § 52-557f (4) defines a recreational purpose as including, but not limited to, "[h]unting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, snow skiing, ice skating sledding, hang gliding, sport parachuting, hot air ballooning and viewing or enjoying historical, archaeological, scenic or scientific sites." "All of the activities listed in the statute . . . involve the specific use of the land for the recreational activity itself or as the object of viewing or enjoyment." Shopey v. Lupoli, Superior Court, judicial district of Litchfield, Docket No. 055850 (April 20, 1994, Pickett, J.) (9 C.S.C.R. 516, 517). In the present case, a group remained at the site over several days to observe the recovery efforts of state and municipal rescue workers. During this time, some individuals among the gathered repeatedly engaged in acts that disrupted the peace. As a matter of law, such activities are not within the meaning of recreational purpose in §52-557f. See Shoney v. Lupoli, supra, 9 C.S.C.R. 517 (observing a fireworks display not a recreational purpose under § 52-557f).
The goal of the Recreational Land Use Act is "to increase the availability of recreational lands by limiting liability for accidents occurring on the property." (Internal quotation marks omitted.) Conwayv. Wilton, 238 Conn. 653, 670, 680 A.2d 242 (1996). Notwithstanding CLP's argument that the "the word `any' strongly suggests an intent to include all injuries caused by an act or omission of the land owner, not just . . . injuries that actually occurred on the owner's property"; (Defendant's Memorandum of Law, dated April 28, 2000, p. 7.); the clear and unambiguous language of the statute limits landowner immunity to those situations in which a person sustains an injury as a result of his usage of the land. See General Statutes § 52-577g (a) ("an owner of land who makes all or any part of the land available to the public without charge . . . owes no duty of care . . . to persons entering for CT Page 10773-d recreational purposes"). The plaintiffs were not on CLP's land when they were injured. The court notes, therefore, that today's decision in no way impairs the goal of the act because the crowd was not using the land for recreational purposes when the injuries to the plaintiffs occurred nor were the injuries suffered by an entrant upon such private lands.
 II Duty of Care
CLP next argues that because "the plaintiffs were injured, not on CLP property, but on a public highway as a result of criminal acts of third parties, CLP did not owe the plaintiffs a duty of care as a matter of law." (Defendant's Memorandum of Law, dated April 28, 2000, p. 8.) "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. . . . [T]he determination of whether a duty exists between individuals is a question of law. . . . Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty." (Citations omitted; internal quotation marks omitted.) Lodge v. Arett Sales Corp.,246 Conn. 563, 571, 717 A.2d 215 (1998).
"[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) Lodge v. Arett Sales Corp.,
supra, 246 Conn. 572. "[T]he exact nature of the harm suffered need not have been foreseeable, only the `general nature' of the harm." Lodge v.Arett Sales Corp., supra, 573.
The "first step in an analysis of whether a duty exists and the extent of the [defendant's] duty, therefore, is to determine the foreseeability of the plaintiff[s'] injury." Lodge v. Arett Sales Corp., supra,246 Conn. 572. The evidence in this case clearly establishes that an unruly crowd, among whom were distraught family members and friends of the drowning victim, remained at the Tariffville Gorge throughout the recovery efforts and that, during that time, certain individuals among the crowd engaged in extralegal acts, including stopping traffic on Route 189. Moreover, such actions were widely reported in the press. The evidence further demonstrates that officials and employees of CLP were CT Page 10773-e aware of the presence of the crowd and the volatility of the situation as recovery efforts continued over several days. Considering all of the presented evidence, the court concludes, as a matter of law, "an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered [by the plaintiffs] was likely to result." (Internal quotation marks omitted.) Lodge v. Arett Sales Corp., supra, 572.
Public policy considerations also weigh in favor of holding CLP legally responsible to the plaintiffs under the present facts. As discussed above, officials and employees of CLP had notice of the crowd's presence at the gorge. By the third day, CLP had ample information about the crowd spilling onto Route 189 and causing problems for motorists. A jury could find that CLP had a duty at such time to do more than rely on local authorities.
 III Proximate Cause Superceding Cause
CLP next argues that "the plaintiffs cannot establish, without speculation or conjecture, that CLP's alleged negligence `legally caused' their injuries." (Defendant's Memorandum of Law, p. 13.) CLP contends that its alleged conduct was neither the cause in fact or the proximate cause of the plaintiff's injuries.
"[L]egal cause ia a hybrid constuct, the result of balancing philosophic, pragatic and moral approaches to causation. The test for cause in fact, is simply, would the injury have occurred were it not for the actor's conduct." (Citations omitted; internal quotation marks omitted.) Doev. Manheimer, 212 Conn. 748, 757, 563 A.2d 699 (1989). In the present case, a jury could reasonably conclude that but for CLP's failure to remove the crowd from its land, the injury to the plaintiffs would not have occurred.
"The second component of legal cause is proximate cause, which we have defined as [a]n actual cause that is a substantial factor in the resulting harm. . . ." (Internal quotation marks omitted.) Doe v. Manheimer, supra,212 Conn. 757. "[T]he issue of proximate cause is ordinarily a question of fact for the trier. . . . Conclusions of proximate cause are to be drawn by the jury and not by the court. . . . It becomes a conclusion of law only when the mind of a fair and reasonable mad could reach only one conclusion; if there is room for reasonable disagreement the question is one to be determined by the trier of fact." (Citations CT Page 10773-f omitted; internal quotations marks omitted.) Doe v. Manheimer, supra, 756-57. Considering all of the evidence submitted with the parties' respective memoranda, the court finds that reasonable minds may differ as to the proximate cause of the plaintiffs' injuries and, therefore, genuine issues of material fact remain.
Furthermore, our courts "have consistently adhered to the standard of 2 Restatement (Second), Torts § 442B (1965)[4] that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the defendant's conduct. . . . The reason [for the general rule precluding liability where the intervening act is intentional or criminal] is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him . . . Such tortious or criminal acts may in themselves be foreseeable, [however,] and so within the scope of the created risk. . . ." (Citations omitted; internal quotation marks omitted.) Doe v. Manheimer, supra, 212 Conn. 759. In this case, a jury could find that CLP's conduct was a substantial factor in causing the plaintiffs' injuries and that the actions of the crowd were within the scope of risk created by CLP's conduct. In short, a jury could find CLP's conduct was a concurrent cause of the plaintiffs' injuries.
Genuine issues of material fact preclude the granting of summary judgment. For all of the above reasons, CLP's motion for summary judgment is denied.
Hennessey, J.