**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**


PATRICIA BROADWAY,      )
                            )
      Plaintiff,          )
                            )
         v.           )     C.A. No. CPU4-13-003479
                            )
MAURICE L. ROGERS,     )
                            )
      Defendant.     )


Submitted:  August 13, 2014
Decided: October 1, 2014


Patricia Broadway                      Maurice L. Rogers
2505 N. Tatnall Street              2610 Philadelphia Pike
Wilmington, Delaware 19801     Claymont, DE 19703
*Plaintiff, Pro Se*                     *Defendant, Pro Se*


## <u>DECISION AFTER TRIAL</u>


In this case, Patricia Broadway ("Broadway") brings two claims for damages. First, she seeks monetary damage for alleged personal injuries on the basis that Maurice L. Rogers, defendant transmitted to her sexual disease of Human Papillomavirus ("HPV"). Secondly, she seeks to recover for damages to her house resulting from the execution of a search warrant, of which Rogers was the subject. Trial in this matter was held on August 13, 2014, after which the Court reserved decision. This is the Court's Final Decision and Order.

## PROCEDURAL BACKGROUND

On November 12, 2013, Broadway filed a *pro se* complaint alleging Rogers sexually transmitted to her a virus known as human papillomavirus, for which she required medical care costing $6,000.00. She brings a second claim alleging Rogers is responsible for damage to her house resulting from the Delaware State Police execution of a search warrant of which Rogers was the target. On December 13, 2013, Rogers filed an answer, in which he denied all allegations. On January 14, 2014, the case was referred to mediation, which did not result in a settlement and therefore the matter proceeded to trial.[1]

At the bench trial on August 13, 2014, the Court heard testimony from Broadway, Officer Jeffrey Kay of the Office of Probation and Parole, Department of Corrections, and Rogers. Documentary evidence was submitted by both parties.[2] Broadway alleged she and Rogers were involved in a long-standing romantic relationship, and he owed her a duty to refrain from engaging in behavior or activity that would substantially expose her to risk of a sexually transmitted disease. She thus alleged that Rogers by engaging in unprotected sexual relations with Nina Scott, among others, he contracted HPV and transmitted to her, and as such, Rogers breached that duty. Secondly, Broadway alleged that Rogers was involved in illegal drug sales and was subject to a search warrant executed at her house. During the execution of the search warrant, her house was damaged by the police and Rogers is

---

[1] In the mediation agreement, Rogers agreed to repair the front door, bedroom door, and basement door. Additionally, Rogers agreed to repair Broadway's dresser, which was searched subject to the search warrant. The final completion date was to be May 11, 2014.

[2] Plaintiff's Exhibits 1 through 7 were admitted into evidence; Defendant's Exhibit 1 was admitted into evidence.

vicariously liable for the damage done to her house by the Police during the execution of the search warrant.

Rogers denies that Broadway contracted HPV from him. Further, he denies that he is liable for the damages to the house on the basis that Broadway knew he was a drug dealer, and therefore assumed the risk of such damage by allowing Rogers to live at her house. Rogers also argues he advised Broadway to open the door when he saw the police running towards the house in an attempt to mitigate damages, but Broadway refused.[3]

## FACTS

Broadway testified her relationship with Rogers lasted for four years, from April 2010 to April 2014. During the second year of the relationship, he began seeing Scott. In October of 2012, following an altercation at Rogers' grandmother's residence, the parties agreed that Rogers would begin to live with Broadway. In January of 2013, the Delaware State Police executed a search warrant on Broadway's residence at 2505 N. Tatnall Street, Wilmington, Delaware. Broadway alleges that the police damaged her house and furniture looking for evidence of drug trafficking by Rogers. Broadway contends that during the search of her house, the police damaged her front door, bedroom door, basement door, and a dresser located in her bedroom.[4] While the police did not find any drugs in the house, they found "bags of heroin" on Rogers' person, and as a result, Rogers was arrested and subsequently incarcerated. Broadway seeks payment for the damages.[5]

---

[3] This statement is contradicted by Broadway's testimony that Rogers advised her to keep the door shut as police approached her home.
[4] *See* Pl.'s Ex. 6.
[5] *See* Pl.'s Ex. 7.

Broadway introduced two letters, from Scott to Rogers dated February 17 and February 19, 2013, respectively.[6] Broadway relies upon these documents to support her position that Rogers was romantically involved with both Broadway and Scott prior to his incarceration. Broadway also introduced a Papanicolaou test[7] from 2011[8] indicating that before Rogers' alleged involvement with Scott, Broadway was negative for "High Risk" strands of HPV.[9] Broadway then introduced results from a June 2013 Papanicolaou test[10], which show that Broadway tested positive for HPV.[11]

Officer Jeffrey Kay testified on behalf of Broadway. Officer Kay is a Senior Probation Officer for the State of Delaware Department of Corrections, and was Rogers' probation officer. Kay testified that Rogers has a tendency to not be truthful indicating that Rogers mislead him on many occasions.

Rogers testified that he is not the source of Broadway's HPV infection. In support of his defense, Rogers submitted into evidence a copy of an e-mail document between Rogers and Broadway, in which Broadway admitted that that she had sexual relations with another unidentified male while they were dating.[12] Rogers further testified he is not responsible for the property damages. He contends that there was no damage to Broadway's house, and that from the inception of their relationship, he performed repairs on the home. Rogers

---

[6] *See* Pl.'s Ex. 1-2.

[7] Commonly known as a pap smear, a screening test for cervical cancer. Cells scraped from the opening of the cervix are examined under a microscope. U.S. National Library of Medicine, *Pap Smear MedlinePlus Medical Encyclopedia* (last modified Aug. 15, 2014) < http://www.nlm.nih.gov/medlineplus/ency/article/003911.htm>.

[8] *See* Pl.'s Ex. 4.

[9] High Risk strands of the Human Papillomavirus are identified as those strands that cause cervical cancer or its precursors. *See* Centers for Disease Control and Prevention, *Human Papillomavirus* (last modified Mar. 20, 2014) <http://www.cdc.gov/std/hpv/stdfact-hpv.htm>.

[10] Admitted as Pl.'s Ex. 5.

[11] Although the test results do not indicate that Broadway contracted a "high risk" strand of HPV, there is still a substantial likelihood of it developing into cervical cancer, and as an incurable disease, ongoing treatment is required. *See* Pl.'s Ex. 5.

[12] Admitted as Def.'s Ex. 1.

4

claims that on the day of the search, he advised Broadway to open the front door for the police, when he observed them running towards the house.

## ANALYSIS

In order to prevail on a claim for negligence, the proponent must establish by a preponderance of the evidence that the defendant owed the plaintiff a duty of care that the defendant breached that duty of care, and that as a result of the breach of the duty of care was a proximate cause of the plaintiff's injury.[13] The duty of care typically owed is "one's duty to act reasonably and protect against reasonably foreseeable events."[14]

### A. Negligent Transmission of HPV

As stated above, Broadway must establish that Rogers owed her a duty of care. In the context of the instant case, that would require Broadway to show that Rogers, as a party to a non-marital romantic relationship with Broadway, owes Broadway a duty not to engage in activity that would increase her exposure to a sexually transmitted disease ("STD"). Additionally, Broadway must offer proof that if Rogers were to engage in such conduct, his duty to her is to do so in a manner that would reduce the likelihood of his transmission of an STD to Broadway.

In a recent publication by the Center for Disease Control and Prevention ("CDC"), HPV is labeled as one of the most commonly sexually transmitted infections ("STI").[15] They conclude that almost all sexually active men and women contract HPV at some point

---

[13] *New Haverford P'Ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001).
[14] *Shepard v. Reinoehl*, 830 A.2d 1235, 1238 (Del. Super. 2002).
[15] Centers for Disease Control and Prevention, *Human Papillomavirus* (last modified Mar. 20, 2014) <http://www.cdc.gov/std/hpv/stdfact-hpv.htm>.

5

in their lives.[16] While there are many different types of HPV, certain strands are known to cause health problems including genital warts and cancers.[17] However, many preventative measures exist to avoid health problems from occurring, including vaccines.[18] It appears that HPV has the potential to be spread through most forms of sexual contact;[19] however, in many cases, no symptoms arise.[20] The CDC also concluded, "in most cases, HPV goes away on its own and does not cause any health problems."[21] However, when HPV does not go away, the aforementioned health risks may arise. Concerning the likelihood of developing cancer from HPV, the CDC states:

> HPV can cause cervical and other cancers including cancer of the vulva, vagina, penis, or anus. It can also cause cancer in the back of the throat, including the base of the tongue and tonsils. Cancer often takes years, even decades, to develop after a person gets HPV. The types of HPV that can cause genital warts are not the same as the types of HPV that can cause cancers.[22]

Finally, the CDC acknowledges that "there is no test to find out a person's 'HPV status,'" and "there is no way to determine of those who have HPV, whether they will develop cancer or other health problems."[23]

Because of the nature of this disease, it is particularly difficult for a potential plaintiff involved in a non-marital relationship to establish when the disease was transmitted. More importantly, the fact that there is no test to establish a person's HPV status makes it difficult to create a timeline for when an aggrieved party was infected, or if the party alleged

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

is even the correct party from whom the infection was contracted. Here, the causal connection between Broadway contracting HPV and Rogers' alleged romantic relationship with Scott is too attenuated, primarily because Broadway did not establish that Rogers is infected with HPV. Moreover, Rogers presented evidence that Broadway was involved in another sexual relationship with a male during the time she was dating him, which raised the possibility that she may have contracted the disease from another source.[24]

Furthermore, case law does not support Broadway's claim. The only precedent in Delaware offering a remedy for Broadway's injury was found in a criminal case. This, however, applies only in those instances where the parties are married. In this instance, the Court when instructing the jury stated:

> If the jury should find that the accused, during the period he had sexual relations with his wife, did not know that he was infected with a veneral [sic] disease, and that he did not communicate with his wife after being informed that he was infected, their verdict should be not guilty.[25]

While courts examining this issue have consistently held that "one who has a contagious disease must take the necessary steps to prevent the spread of the disease,"[26] such courts have also stated that to be liable for negligence for failure to take those steps, ""it must be proved that the defendant knew of the presence of the disease."[27] On this point, the *McPherson* Court further stated:

> Courts dealing specifically with the issue of negligent transmission of sexually transmitted diseases have refined this

---

[24] *See* Def.'s Ex. 1.
[25] *State v. Lankford*, 102 A. 63 ([court] 1917).
[26] *McPherson v. McPherson*, 712 A.2d 1043, 1046 (Me. 1998) (quoting *Mussivand v. David*, 544 N.E.2d 265, 269, in which Court held that a person who knows, or should know, that he or she is infected with venereal disease has duty to abstain from sexual conduct or, at minimum, to warn those persons with whom he or she expects to have sexual relations of his or her condition.)
[27] *Id.* (Quoting 39 Am.Jur.2d *Health* § 48 (1968)).

7

> standard. In perhaps the most frequently cited recent case to deal with the issue, *Berner v. Caldwell,* the Alabama Supreme Court held that one who knows, or should know, that he or she is infected with [a sexually transmitted disease] is under a duty to either abstain from sexual contact with others or, at least, to warn others of the infection prior to having contact with them.[28]

To create any basis for liability, Broadway is required to establish that Rogers had some knowledge that he was infected with a venereal disease before a duty is created. Because the only credible scientific evidence is that there is no reliable method for determining when one contracts HPV, there is no basis for which Broadway may prevail on this claim.

Therefore, I find that the evidence failed to prove by a preponderance that Rogers caused or transmitted the HPV virus to Broadway, and as such, find for the Defendant.

**B. Rogers is liable for the damages to Broadway's Property because his action lead to activities which caused such damage.**

Broadway testified that narcotics were found on Rogers' person during the police search of her house. She does not question the validity of the search warrant or its execution; Broadway is merely seeking damages from Rogers, on the basis that Rogers, as the subject of the search warrant, is liable for damages which were caused by the execution of the search warrant. I have not been able to find any case which has addressed this issue.

The testimony from Rogers indicates he was engaged in the trade of selling illicit drugs.  There was no evidence presented that Broadway was involved in the drug trade; she

---

[28] *Berner v. Caldwell,* 543 So.2d at 689; *see Meany v. Meany,* 639 So.2d at 235; *Mussivand v. David,* 544 N.E.2d at 270; *Lockhart v. Loosen,* 943 P.2d 1074, 1080 (Okla.1997); *Howell v. Spokane & Inland Empire Blood Bk.,* 117 Wash.2d 619, 818 P.2d 1056, 1059 (1991).

is not named in the search warrant, and the warrant focused only on the illegal activity of Rogers. Rogers by engaging in illegal activity exposed Broadway and her property to a raid by the police. It is reasonably foreseeable that someone engaged in the illegal drug trade will at some point be arrested and their place of residence will become the subject of police search. Rogers' activity caused the Police to be at Broadway's house, which caused the damage to her house. In essence, "but for" Rogers' illegal activities, the police would not have been present in Broadway's house, and if his activity did not cause the police presence, the damage sustained to her house would not have occurred during the execution of a search warrant.

To support her claim, Broadway submitted an estimate from Home Depot.[29] She seeks cost to repair for the damage to the Swinging Interior Stile and Rail Doors, in the amount of $272.91; damage to the Wood Entry Door, in the amount of $1,342.00; damage to the basement door, in the amount of $272.28; and labor cost of $987.00. She seeks cost to replace a damaged Dresser, in the amount of $799.00. In support of her claim, she submitted photos of the Dresser.[30] The photos show damage to the front door, where a battering ram was used to enter the house, damage to the basement door, and damage to the entry ways into the house, where it appears the doors were unhinged. The photo also shows the damage to the Dresser.

The evidence indicates, Rogers' actions caused the police to search Broadway's house, which caused the damage. Additionally, the search for drugs in the house caused the damage to the Dresser. Therefore, on the claim for property damage, I find for Plaintiff.

---

[29] Pl.'s Ex. 7.
[30] Pl.'s Ex. 6.

## CONCLUSION

Based upon the testimonial evidence and exhibits presented, I find as follows:

1. On the claim of negligent transfer of a venereal disease, judgment is entered for Defendant;

2. On the claim for damages to her property, I find by the preponderance of the evidence for Plaintiff, and award damages as follows:

    (a) Damage to the front door, in the amount of $1,342.00;

    (b) Damage to the interior doors $545.19;

    (c) Damage to the Dresser, 50% of value, $397.50; and

    (d) Labor Cost, $987.00.

Accordingly, judgment is entered for Patricia Broadway against Maurice L. Rogers for $3,271.69, cost of these proceedings, and post-judgment interest at 5.75% until paid.

**SO ORDERED.**

_____
The Honorable Alex J. Smalls,
Chief Judge

Broadway-OP  Sep 2014

10