******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom McDONALD, J., joins, dissenting. I disagree with the majority's decision to affirm the judgment of the Appellate Court, which reversed the trial court's judgment in favor of the defendant, Victory Properties, LLC. In my view, the trial court correctly concluded that the defendant, the property owner in this case, did not have a legal duty to prevent ten year old Luis Cruz from taking an eighteen pound piece of cinder block (cinder block) from the backyard of his apartment building, carrying the cinder block up to the balcony of his third story unit, and dropping it on the named plaintiff, Adriana Ruiz,[1] also a tenant in the building, because such conduct was not a reasonably foreseeable consequence of the defendant's leaving the cinder block in the yard. Additionally, public policy dictates that it would be imprudent to allow a jury to hold the defendant responsible for Cruz' conduct, as the majority does today. Instead, I would reverse the judgment of the Appellate Court and reinstate the trial court's judgment in favor of the defendant. Accordingly, I respectfully dissent.

I

I begin by setting forth the governing legal principles. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). At issue in the present case is the first element, duty. "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . [T]he determination of whether a duty exists between individuals is a question of law. . . . Only if a duty is found to exist does the trier of fact go on to determine whether the defendant has violated that duty." (Citations omitted; internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 571, 717 A.2d 215 (1998).

There is no question that the defendant in the present case owed the plaintiff a duty of reasonable care. As the majority accurately notes, all landlords owe their tenants a duty to maintain the common areas of an apartment building in a reasonably safe condition; see, e.g., *Giacalone* v. *Housing Authority*, 306 Conn. 399, 407–408, 51 A.3d 352 (2012); and it is undisputed that Cruz took the cinder block that injured the plaintiff from a common area of the apartment building. The precise question before this court is whether the *scope* of the defendant's duty of care included preventing the plaintiff's injuries. To determine the scope of the

defendant's duty, a two step analysis is required. This involves: "(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 525–26, 832 A.2d 1180 (2003).

The first step of the duty analysis requires an examination of whether the harm of the general nature suffered by the plaintiff was a reasonably foreseeable consequence of the alleged negligence. "[T]he analysis of foreseeability logically cannot be extended so far that the term 'general harm' incorporates any accident involving [the defendant's conduct] . . . with no consideration given to the direct cause of the accident. It is impractical, if not impossible, to separate the question of duty from an analysis of the cause of the harm when [as in the present case] the duty is asserted against one who is not the direct cause of the harm.[2] In defining the limits of duty, we have recognized that '[w]hat is relevant . . . is the . . . attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand.' . . . Articulated another way, the attenuation between the [plaintiff's] harm and the [defendant's] conduct is nothing more than a determination of whether the harm was a reasonably foreseeable consequence of the [defendant's] conduct. It is a well established tenet of our tort jurisprudence that '[d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable.' " (Citations omitted; footnotes altered.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 574–75. "Liability may not be imposed merely because it might have been foreseeable that some accident could have occurred; rather, liability attaches only for *reasonably* foreseeable consequences." (Emphasis in original.) Id., 577.

If the harm the plaintiff suffered was reasonably foreseeable, then the second step of the duty analysis requires consideration of the following four public policy factors: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 118, 869 A.2d 179 (2005). When these policy considerations weigh in favor of finding a duty, liability may be imposed. This court has recognized "that duty is not sacrosanct in itself, but is only an expression of the

sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 386.

II

A

In applying the foregoing principles to the present case, I begin with the first step of the duty analysis, considering whether an ordinary person in the position of the defendant would anticipate that harm of the general nature suffered by the plaintiff was likely to result from the defendant negligently allowing broken cinder blocks to accumulate in the backyard of the apartment building. I conclude that such harm was not a reasonably foreseeable consequence of this alleged negligence.

The question of foreseeability in cases such as the present one, in which a third party, rather than the defendant, directly caused the plaintiff's injuries, turns largely on the foreseeability of the third party's conduct. In assessing the foreseeability of a third party's conduct, courts focus on whether the defendant had, or should have had, notice of the third party's propensity to engage in such conduct, or knowledge of past instances of the same type of conduct in the same location. See, e.g., *Monk* v. *Temple George Associates, LLC*, supra, 273 Conn. 115–16 (physical attack on plaintiff in nightclub parking lot was foreseeable, in part, because serious crimes previously occurred in same vicinity); *Indian Acres of Thornburg, Inc.* v. *Denion*, 215 Va. 847, 851, 213 S.E.2d 797 (1975) (plaintiff's injuries were caused by child dropping piece of concrete from observation tower on camping ground was not reasonably foresee-able, in part, because property owner had no knowledge that children previously were dropping rocks or other objects from tower); cf. 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 19, comment (d), p. 217 (2010) (identifying "likelihood of improper conduct on the part of the plaintiff or a third party" as one factor to be considered in determining liability); 2 Restatement (Second), Torts § 302 B, illustration (14), pp. 92–93 (1965) (defendant liable for damage caused by children's misuse of construction equipment on Halloween night when defendant left equipment unguarded in neighborhood in which children "habitually" engaged in mischief on Halloween night).

Another factor that courts consider in assessing foreseeability, specific to cases in which the defendant is alleged to have negligently allowed a third party access to an object that the third party uses and thereby injures the plaintiff with, is the physical proximity between the location where the defendant left the object and the location where the third party ultimately injured the plaintiff. As one court has stated, "[i]t is not the nature

of the object in the abstract that matters, it is the nature of the object in the matrix of all the circumstances that surround the event [in question that matters] . . . ." *Beffa* v. *Terminal Railroad Assn.*, 208 Ill. App. 3d 7, 14, 566 N.E.2d 846 (1991). In general, it is more foreseeable that a third party will misuse an object when a defendant has left the object in a location in which the third party is more likely to have access to it or be in a position to misuse it. See *Feichtner* v. *Cleveland*, 95 Ohio App. 3d 388, 396, 642 N.E.2d 657 (third party's dropping of construction debris from overpass bridge onto vehicle below was not foreseeable, in part, because construction companies left debris "at least twenty-five to thirty yards away from the bridge"), appeal denied, 70 Ohio St. 3d 1476, 640 N.E.2d 848 (1994); 1 Restatement (Third), supra, § 19, illustration (3), pp. 218–19 (father may be found liable for ten year old son's shooting of another child when father placed loaded gun on coffee table in family room); cf. *Neal* v. *Shiels, Inc.*, 166 Conn. 3, 13, 347 A.2d 102 (1974) (child's injuries from being struck by car were foreseeable when defendant ice cream truck vendor deliberately attracted children to street by ringing bells).

In the present case, the defendant's alleged negligence and the direct cause of the plaintiff's injuries, namely, Cruz' dropping of the cinder block from a third story balcony, were simply too attenuated for the harm the plaintiff suffered to have been reasonably foreseeable. The plaintiff claims that the defendant negligently allowed broken cinder blocks and other debris to accumulate in the backyard of the apartment building. Between the time of the defendant's inaction and the plaintiff's injuries, Cruz removed the cinder block in question from the common area that the defendant was responsible for maintaining, carried it to the third story of the building, brought it inside his family's private residence, and intentionally dropped it from the balcony into the backyard in which the plaintiff, other children, and some of their parents were standing. Although the defendant's inaction was a "but for" cause of the plaintiff's injuries, the link between the defendant's inaction and the plaintiff's injuries was too attenuated to conclude that the plaintiff's injuries were a reasonably foreseeable consequence of the defendant's alleged negligence. The defendant did not leave the cinder block in a location from which it easily could be thrown from a significant height, such as a shared rooftop deck, the hallway outside Cruz' third floor apartment, or even the balcony from which Cruz dropped the cinder block. See *Feichtner* v. *Cleveland*, supra, 95 Ohio App. 3d 396. It was Cruz, not the defendant, who brought the cinder block from the backyard to the third floor balcony before dropping it below. Thus, the possibility that the plaintiff would suffer harm of the general nature that she did was too remote to expect a reasonable person in the defendant's position to anticipate such harm.

What further makes the plaintiff's injuries not reasonably foreseeable is the intentional nature of Cruz' conduct. While Cruz did not intend to injure the plaintiff, Cruz' conduct was intentional insofar as he intended to drop the cinder block from the third story balcony and was aware that he was dropping it in the general vicinity of the plaintiff. This type of intentional conduct is of the same nature as intentional, tortious acts and is unforeseeable for the same reason that an ordinary person would not anticipate that even a child would knowingly endanger another person in this manner. This is reflected in § 442 B of the Restatement (Second) of Torts, relating to intervening causes, in which one illustration makes clear that a property owner is not liable for a child's intentional conduct, such as Cruz' actions in the present case: "The employees of the A Theatre Company negligently leave a chair on the railing of the balcony, creating the risk that it may accidentally or negligently be knocked off the railing in the dark, and will injure some person below. Without any reason whatever on the part of the Theatre Company to anticipate such conduct, B, a boy attending the theatre, deliberately throws the chair off of the railing, and it falls upon C and injures him. A Theatre is not liable to C." 2 Restatement (Second), supra, § 442 B, illustration (9), pp. 471–72. This illustration does not provide that the "boy" intended to harm C, who was injured by the chair, and, yet, it notes that the defendant is not liable for the boy's conduct. Id. As this illustration demonstrates, the scope of a property owner's duty of reasonable care does not encompass preventing this type of intentional third-party conduct.

Finally, the harm that the plaintiff suffered was not reasonably foreseeable because there is no evidence in the record that the defendant knew or should have known that either Cruz or other tenants had a propensity for throwing objects from their balconies. According to the plaintiff's allegations, the defendant was aware that broken cinder blocks and other debris had accumulated in the backyard of the apartment building and that children regularly played in this area. Thus, as the trial court and dissenting judge in the Appellate Court both noted, it was reasonably foreseeable that children would injure themselves by tripping over the cinder blocks in the backyard, or even by throwing pieces of them at one another, as a consequence of the defendant allowing the debris to accumulate in that area. See *Ruiz* v. *Victory Properties, LLC*, 135 Conn. App. 119, 138, 43 A.2d 186 (2012) (*Alvord, J.*, dissenting). There was no evidence, however, that Cruz or any other tenant in the apartment building had previously thrown an object from an upper story of the apartment building. Without notice of past instances of such conduct, in combination with the other reasons that I discussed previously, I conclude that an ordinary person in the defendant's position would not anticipate

that harm of the general nature suffered by the plaintiff was likely to result from the defendant's inaction.

B

I turn next to the second step of the duty analysis, which requires consideration of four factors to determine whether public policy supports allowing an extension of the defendant's legal duty to prevent the plaintiff's injuries. I undertake the second step of the duty analysis despite concluding that the harm suffered by the plaintiff was not reasonably foreseeable because, even if the harm that the plaintiff suffered *was* reasonably foreseeable, I would decide on public policy grounds that the defendant should not be held responsible for injuries that Cruz caused the plaintiff to suffer when he dropped the cinder block on her.

As I previously noted, the four factors relevant to the public policy inquiry are: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, supra, 273 Conn. 118. Assuming that the activity in question is children playing in the outdoor common areas of apartment buildings, I firmly believe that none of the four public policy factors weighs in favor of imposing a duty on the defendant in these circumstances, and that the second, third, and fourth factors weigh against imposing such a duty.

The first factor, the normal expectations of children and their parents when children play in outdoor common areas, does not support imposing a duty on the defendant. The expectations of children and their parents regarding the outdoor common areas of apartment buildings are actually quite well defined, given the abundance of statutory and common law relating to premises liability and children. See, e.g., General Statutes § 47a-7 (a) (3) (requiring landlords to "keep all common areas of the premises in a clean and safe condition"); *Noebel* v. *Housing Authority*, 146 Conn. 197, 200, 148 A.2d 766 (1959) (noting that landlords have duty to exercise reasonable care in maintaining premises). Landlords undoubtedly owe their tenants a duty to maintain common areas in a reasonably safe condition, and that is what their tenants expect. See *Giacalone* v. *Housing Authority*, supra, 306 Conn. 407–408. This duty, however, does not require landlords to secure or remove from an apartment building's outdoor common areas all objects that potentially could be dangerous when brought *inside the apartment and dropped from an upper story*. Nor do tenants expect landlords to do so, as demonstrated by a photograph that was introduced into evidence in the present case and shows that the tenants in the plaintiff's apartment building had used

one of the cinder blocks in the backyard to stabilize a basketball hoop and stand (basketball hoop). Surely, the tenants could not have expected the defendant to remove *all* of the cinder blocks from the backyard if they were using one of the cinder blocks to enable their children to play basketball in the backyard. As our law reflects, tenants expect landlords to maintain common areas in a *reasonably* safe condition. Tenants do not expect landlords to eliminate all possibility that one tenant will injure another with an inanimate object from a common area.

The second factor, the public policy of encouraging children to play safely in outdoor common areas of apartment buildings, also weighs against imposing a duty on the defendant. We unquestionably want to encourage children to play with one another for a variety of reasons, including the physical benefit they receive from exercise as well as the social benefit gained from interacting with their peers. Imposing a duty on the defendant in the present case, however, will not increase participation in this obviously desirable activity. Rather, imposing a duty on the defendant to remove the cinder blocks and debris from the backyard to protect against the type of harm that the plaintiff suffered would create a concomitant duty to remove all comparable objects from the backyard, such as decorative rocks, bird baths, lawn ornaments, lawn furniture, sprinklers, garden tools, stones from a stone wall, and countless other items. As the trial court observed, "[i]f thrown off a balcony, practically anything can constitute a dangerous missile."

Requiring landlords to strip outdoor common areas bare would not encourage children to play outdoors because it would remove many objects that facilitate outdoor play but that can be dangerous when misused. For instance, Cruz could just as easily have picked up the cinder block that was securing the basketball hoop and dropped it from the balcony of his apartment unit, instead of the cinder block that he did, and, according to the majority's theory, the defendant would have been equally liable. If the defendant had been required to remove the cinder block that was stabilizing the basketball hoop, the children in that apartment building would have had one less activity available to them, or at least had an activity that was less safe because the basketball hoop likely would have been unstable in the absence of that cinder block. Thus, imposing a duty on the defendant in this case ultimately could decrease children's participation in playing in the outdoor common areas of apartment buildings.

Moreover, requiring landlords to secure or remove from outdoor common areas every object that could be dangerous when thrown from the third story of a building also would carry significant economic costs, which landlords would almost surely pass on to their

tenants in the form of increased rent. See, e.g., *Saelzler* v. *Advanced Group 400*, 25 Cal. 4th 763, 777, 23 P.3d 1143, 107 Cal. Rptr. 2d 617 (2001) (recognizing that costs of premises liability are eventually borne by renters); *Miller* v. *Whitworth*, 193 W. Va. 262, 268, 455 S.E.2d 821 (1995) (same); see also 1 Restatement (Third), supra, § 3, comment (e), p. 31 (noting that financial burden of risk prevention is generally passed on from actors to their customers). Ultimately, increased rental costs could price certain low income families out of the market, depriving them of housing that includes outdoor common areas in which children can play.[3] Landlords also might incur higher insurance premiums due to their increased exposure to liability, the costs of which likely would be passed on to tenants. Some property owners might eliminate outdoor play areas altogether, or limit their tenants' access to them, rather than expose themselves to liability for tenants' misuse of objects in the common area. "We frequently have concluded that when the social costs associated with liability are too high to justify its imposition, no duty will be found"; *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 584; and that principle clearly applies in the present case.

The third factor, the avoidance of increased litigation, is the factor that most heavily weighs against imposing a duty on the defendant. As the defendant claimed in the Appellate Court, imposing a duty on the defendant in these circumstances is tantamount to making landlords "strictly liable for the actions of the children of their tenants while they are playing in common areas of the property." *Ruiz* v. *Victory Properties, LLC*, supra, 135 Conn. App. 127. The logical consequence of expanding premises liability as the court does today is an increase in litigation, as plaintiffs will seek redress for injuries caused by children misusing a potentially limitless number of objects from the common areas of apartment buildings. Not only would imposing a duty on the defendant make landlords strictly liable for injuries caused by children in common areas, but it would also make homeowners potentially liable for injuries that neighboring children cause by misusing otherwise harmless objects on their property. I believe that the majority overestimates property owners' ability to immediately conform to the duty that it imposes today, given the potentially unlimited number of objects that it requires them to ensure are beyond the reach of a curious child. Indeed, imposing a duty on the defendant in this case will significantly increase litigation between tenants, landlords, and homeowners in Connecticut.

Finally, the fourth factor, the decisions of other jurisdictions, also weighs heavily against imposing a duty on the defendant. The majority concludes that the decisions of other jurisdictions are split on this issue without citing a single factually similar case in which a court has decided that a landlord had a duty to protect a child

from a third party such as Cruz. In the most factually similar case that I have discovered, the court decided that preventing such harm was not within the scope of the landlord's duty.

In *Indian Acres of Thornburg, Inc.* v. *Denion*, supra, 215 Va. 847 (*Indian Acres*), the Supreme Court of Virginia concluded that an owner of a camping ground did not owe the plaintiff a duty to remove rocks and construction debris to protect her from injuries that she sustained when a twelve year old child dropped a piece of concrete on her from an observation tower on the camping ground. See id., 847–48, 851. In *Indian Acres*, the plaintiff's family owned a lot on the defendant's property. See id., 848. In the common area of the camping ground was an observation tower, and, at the base of the tower, there were rocks and construction debris. See id. The plaintiff was injured when she walked beneath the tower and was struck by a piece of concrete that the twelve year old child dropped from the top of the tower while attempting to strike a rail or board near the tower's base. Id. On the basis of these facts, the Supreme Court of Virginia concluded that the defendant was not liable for the plaintiff's injuries because the twelve year old child's conduct was not reasonably foreseeable. See id., 850–51. The similarities between this case and the present case are stark, from the fact that the plaintiff in *Indian Acres* was injured in a common area of the property to the fact that the twelve year old child acted intentionally but without intent to harm the plaintiff.[4] The court's conclusion suggests that this court, too, should not expand the scope of the defendant's duty of reasonable care.

Other cases have addressed a property owner's legal duty in situations in which children caused injuries by misusing an object in a dangerous manner in the common area itself. In those cases, the authority is split. For example, in *Englund* v. *Vital*, 838 N.W.2d 621 (S.D. 2013), the South Dakota Supreme Court declined to impose liability on a landlord for injuries that a nine year old tenant (plaintiff) sustained when she was struck with a rock thrown by a twelve year old tenant (child) in the backyard. Id., 630. The rock came from a pile of landscaping materials that the landlord had expressly agreed to remove before the plaintiff was injured. Id., 625. Moreover, the court assumed, for purposes of its analysis, that the landlord knew that the child who threw the rock previously had thrown rocks in the backyard area. Id., 630. Nevertheless, the court determined that the landlord did not owe the plaintiff a duty to protect her from the child who threw the rock because the child's conduct was not sufficiently foreseeable. Id. Although the court also decided that the landlord was not liable in part because he had ceded full control over the property on which the rock was thrown, and therefore owed no duty to maintain it as a common area; id.; *Englund* is analogous to our case

insofar as Cruz threw the cinder block from his family's private residence, an area that the defendant was not responsible for maintaining. *Englund* is also instructive because the court separately decided that the landlord did not owe the plaintiff a duty to protect her from the child's conduct.[5] Id. Additionally, a concurring justice in *Englund* decided strictly on policy grounds that the landlord owed no duty to protect the plaintiff. See id., 632–34 (Konenkamp, J., concurring in result). Other jurisdictions also have decided that property owners do not have a legal duty to protect children from injuring themselves, or being injured by a third party, with objects in common areas. See, e.g., *Cole* v. *Housing Authority*, 68 Ill. App. 3d 66, 71–72, 385 N.E.2d 382 (1979) (defendants had no duty to prevent injuries to plaintiff resulting from another child's throwing or swinging of metal stake that defendant contractor had left on ground); *Reeves* v. *Springfield*, 5 Ill. App. 3d 880, 882–83, 284 N.E.2d 373 (1972) (municipality had no duty to protect child from being injured by another child who threw discarded license plate); *Foss* v. *Kincade*, 766 N.W.2d 317, 322–23 (Minn. 2009) (homeowners had no duty to prevent child from injuring himself after he climbed on and knocked over unsecured bookshelf).

In other jurisdictions, courts have found that the landlord had such a duty. See *Qureshi* v. *Ahmed*, 394 Ill. App. 3d 883, 892–93, 916 N.E.2d 1153 (2009) (court could not conclude, as matter of law, that homeowners did not owe child duty to protect her from injuries caused by treadmill); *Grant* v. *South Roxana Dad's Club*, 381 Ill. App. 3d 665, 673, 886 N.E.2d 543 (2008) (operator of playground owed child duty of care to remove pile of dirt on which child hurt himself); *Mayer ex rel. Mayer* v. *Housing Authority*, 84 N.J. Super. 411, 423–24, 202 A.2d 439 (App. Div. 1964) (defendant owed duty of care to child who was injured by rock that was thrown by another child in recreational area in which children regularly threw rocks), aff'd, 44 N.J. 567, 210 A.2d 617 (1965).

The majority notes that this lack of uniformity is likely due to the fact that what constitutes a reasonably foreseeable injury under the circumstances is "a highly fact-sensitive issue," susceptible to the slightest factual variations. Footnote 10 of the majority opinion. But the foregoing cases, which involve children's misuse of objects within common areas, are not factually similar to the present case and, in any event, do not support the majority's decision to expand the defendant's scope of liability, because the cases are split. The case that is most analogous to the present case, however, *Indian Acres*, suggests that the question of the defendant's duty is not one for the jury and that the defendant should prevail as a matter of law. See *Indian Acres of Thornburg, Inc.* v. *Denion*, supra, 215 Va. 851.

Collectively, the four policy factors militate against imposing a duty on the defendant in this case. Tort law is grounded in the fundamental principle that an actor should be required to take reasonable precautions against risks only when the benefit of the risk reducing precaution outweighs the burden of taking the precaution. See *United States* v. *Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947); *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 579; 1 Restatement (Third), supra, § 3, comment (e), pp. 30–31. The costs involved with requiring every landlord in Connecticut to secure or remove every object from the common areas of apartment buildings that could conceivably be thrown from a window, balcony, or other private or off-site location outweigh the benefits that would result from taking that precaution. Thus, I would conclude, as a matter of law, that preventing Cruz from injuring the plaintiff was outside of the scope of the defendant's duty of reasonable care.[6]

### III

I now address the central flaws in the majority's reasoning. The majority contends that harm of the general nature that the plaintiff suffered was a reasonably foreseeable consequence of the defendant's alleged negligence in leaving the cinder block in the backyard. The crux of the majority's contention is that the foreseeability inquiry must be framed broadly and should not focus on the specific manner in which the plaintiff was injured. The majority relies on the principle that "[s]o long as harm of the general nature as that which occurred is foreseeable there is a basis for liability even though the manner in which the accident happens is unusual, bizarre or unforeseeable." *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 333, 430 A.2d 1 (1980). Applying this principle, the majority focuses on the types of injuries that cinder blocks could cause, and concludes that, because the plaintiff's injuries fall along that "continuum of harm," the harm of the general nature that the plaintiff suffered was reasonably foreseeable. I do not believe this is the correct approach.

The majority unduly broadens the foreseeability inquiry to a level of generality at which every conceivable accident involving the cinder block that Cruz used to injure the plaintiff would be deemed foreseeable. While it is true that the foreseeability inquiry should not narrowly focus on the manner in which the plaintiff was injured, it is incorrect to suggest that the circumstances giving rise to the plaintiff's injuries are never relevant. To the contrary, the majority concedes that determining the foreseeability of a plaintiff's injuries involves a fact-sensitive inquiry; see footnote 10 of the majority opinion; and a survey of our case law reveals that we often have considered the manner in which a plaintiff's injuries occurred to be highly relevant to the foreseeability inquiry.[7] See, e.g., *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 577 (considering foreseeability

of brake failure of negligently maintained fire engine that caused plaintiffs' injuries or deaths in relation to defendants' transmission of false fire alarm); *Doe* v. *Manheimer*, 212 Conn. 748, 762–63, 563 A.2d 699 (1989) (assessing foreseeability of sexual assault of plaintiff by considering past occurrences of similar criminal conduct in same location), overruled in part on other grounds by *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 662 A.2d 753 (1995); *Neal* v. *Shiels, Inc.*, supra, 166 Conn. 13 (considering foreseeability of children being struck by cars in context of defendant selling ice cream from truck parked on public streets); *Merhi* v. *Becker*, 164 Conn. 516, 522, 325 A.2d 270 (1973) (defining harm of general nature as "harm to patrons from inadequately deterred raucous, violent conduct"); *Smith* v. *Leuthner*, 156 Conn. 422, 426, 242 A.2d 728 (1968) (defining harm of general nature as "the theft of [a] car and injury to person or property from the operation of the car by the thief").

Indeed, we recognized in *Lodge* that, in cases in which a third party, rather than the defendant, is the direct cause of the harm to the plaintiff, one cannot consider the scope of the defendant's duty without also considering the direct cause of the harm. As the court in *Lodge* stated, "[i]t is impractical, if not impossible, to separate the question of duty from an analysis of the cause of the harm when the duty is asserted against one who is not the direct cause of the harm." *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 574. Our analysis and holding in *Lodge* demonstrate that, in cases such as the present one, we cannot properly determine the scope of the defendant's duty without considering all of the circumstances in which the plaintiff was injured, and specifically the defendant's relation to the third party tortfeasor. The majority's refusal to consider the circumstances that precipitated the plaintiff's injuries in the present case is therefore misguided.

In concluding that the harm of the general nature that the plaintiff suffered should be defined without considering the manner in which it occurred, the majority also relies on § 29 of the Restatement (Third) of Torts. Section 29, however, supports the view that the manner in which a plaintiff is injured is relevant to the foreseeability analysis, as comment (o) to that section provides: "Some aspects of the manner in which the harm occurs *are* relevant to a determination of the scope of an actor's liability. . . . [T]he manner of harm can be of critical importance in determining whether the harm is within the scope of liability . . . ." (Emphasis in original.) 1 Restatement (Third), supra, § 29, comment (o), pp. 509–10. Thus, the Restatement (Third) of Torts instructs that, in determining the foreseeability of the harm of the general nature that the plaintiff suffered, it is not only appropriate but necessary to consider all of the circumstances giving rise to the plaintiff's injuries, including the manner in which she was injured.

And, logically, this makes sense. If the manner in which the plaintiff was injured was irrelevant, as the majority concludes, then the defendant could have been held liable even if Cruz had brought the cinder block to his third story unit and left it there for three days before deciding to throw it off the balcony. Likewise, according to the majority, the defendant could have been held liable if Cruz had taken the cinder block from the backyard, carried it to a different apartment building, and injured someone there. Such absurd results demonstrate that the manner of the harm is, as the Restatement (Third) of Torts indicates, crucial to determining the foreseeability of a plaintiff's injury.

Another misstep in the majority's analysis is its mistaken conclusion that the cinder block that Cruz used to injure the plaintiff was an inherently dangerous object. The majority asserts that the cinder blocks and debris were dangerous objects because children could have tripped over them or even thrown pieces of them at one another, and that, even if they were inherently harmless, one can nevertheless be held liable for injuries resulting therefrom.

The majority mischaracterizes the true nature of the cinder block in question and fails to grasp its significance. The Restatement (Third) of Torts explains that the nature of an object is relevant insofar as the greater the danger an object presents, the greater precautions an ordinarily prudent person would take to minimize the risk of harm the object poses. See id., § 3, comment (e), p. 31. For example, a parent who leaves a loaded gun on a coffee table in his family room can be held liable if his child were to use the gun to shoot another child because it would be obvious to a prudent person that the lethal nature of the object in question, the gun, demands greater precautions when it is left unguarded in an area to which children have access. See id., § 19, illustration (3), pp. 218–19. There is no doubt that a broken cinder block is not as inherently dangerous as a loaded gun, explosives, broken glass, poisonous substances, toxic waste, or exposed electrical wires. See id., § 3, comment (e), p. 31 (listing dangerous objects or activities). The majority mistakenly equates an object that can be dangerous when misused with one that is *inherently* dangerous, such as the foregoing items. But for Cruz' decision to transport the cinder block from the backyard and to drop it off a third floor balcony, the cinder block in question would have been no more harmful than a decorative lawn ornament or chair in the common area. The fact that the cinder block was an inherently harmless object made it less foreseeable that the plaintiff would suffer the harm that she did.

Finally, the majority contends that a jury reasonably could find that the defendant owed the plaintiff a duty to protect her from Cruz because this case involved children, and the presence of children sometimes

requires actors to take additional precautions. See footnote 6 and accompanying text of the majority opinion. The majority expressly relies on § 339 of the Restatement (Second) of Torts, which pertains to a landowner's liability for artificial conditions that are highly dangerous to trespassing children. 2 Restatement (Second), supra, § 339, p. 197; see footnote 6 of the majority opinion. That principle, however, on its face, does not apply to the present case. First, the doctrine does not apply because neither the plaintiff nor Cruz was trespassing. Rather, they were both tenants properly using the backyard of their apartment building and, in Cruz' case, the balcony of his third story unit. Second, the cinder block lying on the ground in the backyard was not a condition that the defendant should have realized involved "an unreasonable risk of death or serious bodily harm" to the children playing there, as § 339 (b) requires. 2 Restatement (Second), supra, § 339 (b), p. 197; see also *Dzenutis* v. *Dzenutis*, 200 Conn. 290, 304–306, 512 A.2d 130 (1986) (applying § 339 in case in which child was severely burned when bucket of hot tar spilled on him). Finally, § 339 is inapplicable to the present case because Cruz realized the risk involved in dropping an eighteen pound cinder block from a third story balcony into a backyard where other children were playing, which, under § 339, bars the landowner's liability. See 2 Restatement (Second), supra, § 339 (c), p. 197. It is clear that Cruz understood the risk that he was taking when he dropped the cinder block from the third story balcony because, immediately before dropping it, he yelled to the plaintiff, "[m]ove back, because I'm going to throw the rock . . . ." Cruz understood the risk that he was taking, and the defendant should not be held liable for Cruz' decision to disregard that risk.

For all of the foregoing reasons, I would conclude, as a matter of law, that protecting the plaintiff from Cruz was outside the scope of the defendant's legal duty. The defendant should not be exposed to liability for Cruz' conduct because the harm that the plaintiff suffered was not reasonably foreseeable, and, furthermore, public policy dictates that it would be unwise to expand a landlord's duty of reasonable care under the facts of this case. I therefore would reverse the judgment of the Appellate Court and reinstate the judgment of the trial court in favor of the defendant. Accordingly, I respectfully dissent.

[1] Adriana Ruiz' mother, Olga Rivera, also is a plaintiff in the present case. For ease of reference, we refer to Adriana Ruiz as the plaintiff throughout this opinion.

[2] We have long recognized that the elements of duty and proximate causation are, at least in some cases, closely related. See, e.g., *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 387–88 n.4.

[3] The trial court reached this same conclusion, stating: "Such an imposition [of liability] would create substantial economic and social costs. . . . To create liability for landlords in this situation would likely discourage landlords from renting apartments to families with young children. It would surely drive up the economic costs associated with maintaining and insuring rental properties, without a concomitant benefit of safeguarding against conditions and hazards that are much more prevalent than the one here.

Recognizing such a duty, rather than contributing to the welfare of the public, is more likely to create a new burden on families looking for affordable rental housing. Though imposing liability on the defendant would surely be a benefit to the plaintiff and her family, the overall economic and societal costs militate against such an imposition in like situations."

[4] The majority's attempt to distinguish *Indian Acres* from the present case is unavailing. See footnote 11 of the majority opinion. Although it is true that the piece of concrete that the twelve year old child used in *Indian Acres* came from an active construction site, that was not the determinative fact on which the court's decision rested. Rather, the court's primary reasons for deciding that the property owner was not responsible for the plaintiff's injuries were that they "flowed directly from the independent nonnegligent act of [the twelve year old child]"; *Indian Acres of Thornburg, Inc.* v. *Denion*, supra, 215 Va. 850; and the fact that "[the defendant] had no knowledge whatever of rocks being tossed from the tower by children . . . ." Id., 851. Thus, the facts that were determinative in *Indian Acres* are remarkable in how closely they parallel those of the present case. The defendant in the present case had no notice of children dropping rocks or cinder blocks from heights, and Cruz dropped the cinder block from a private balcony rather than an observation tower.

More telling, the majority does not offer a case from another jurisdiction as factually similar as *Indian Acres* is to the present case, and, yet, it concludes that the decisions of other jurisdictions support expanding the scope of the defendant's duty.

[5] The majority, in attempting to distinguish *Englund* from the present case, again, misses the point. See footnote 11 of the majority opinion. The court's decision in *Englund* that the landlord did not have a duty to protect the plaintiff from the child who threw the rock was grounded in the fact that, although the landlord may have had notice that the child had a propensity to throw rocks, he did not have notice that the child had previously thrown rocks *at people. Englund* v. *Vital*, supra, 838 N.W.2d 630. The fact that the landlord in *Englund* had ceded control over the area of the property in question does not distinguish it from the present case because Cruz dropped the cinder block that injured the plaintiff from a private residence, an area over which the defendant had no control. Moreover, the South Dakota Supreme Court decided the question of control over the common area separately from the issue of foreseeability. See id.

[6] As I previously noted, the question of the limits of the defendant's legal duty is closely related to the question of whether the defendant proximately caused the plaintiff's injuries. See footnote 2 of this opinion. Having decided that the defendant did not owe the plaintiff a duty to protect her from Cruz, I also would conclude that the defendant's conduct or inaction was not a proximate cause of the plaintiff's injuries.

[7] Even *Pisel* v. *Stamford Hospital*, supra, 180 Conn. 314, the case on which the majority relies for the proposition that the bizarre manner in which an injury occurs need not be foreseeable, demonstrates that the foreseeability of the specific conduct by the plaintiff or a third party can be critical to determining the foreseeability of the harm of the general nature of that suffered. In *Pisel*, a psychiatric patient killed herself while she was alone in a locked hospital room by wedging her head between the mattress of her bed and the steel bed frame. Id., 316–17. The hospital staff failed to observe the patient for the preceding four hours, even though the patient had been in a highly agitated and psychotic state for more than one week, had been walking into walls, and had told a staff member that she was hearing voices telling her to hurt herself. Id. This court decided, in the context of proximate causation, that a jury reasonably could find that the patient's death was a reasonably foreseeable consequence of the defendants' negligent failure to care for and watch her. See id., 331–33. Implicit in that decision is that it was reasonably foreseeable that the patient would harm herself because the defendants knew that the patient previously had engaged in the same conduct by attempting to harm herself and had intended to harm herself again. As I previously discussed, the plaintiff's injuries in the present case were not reasonably foreseeable, in part, because the defendant had no notice of past instances involving tenants' intentional throwing of objects off their balconies.